OWEN, Judge.
Appellant, a public utility supplying electrical power, was held liable for the damage to a customer’s electrical motor due to a phase failure caused by the utility’s negligence. The appeal is from a money judgment following a non-jury trial.
A line crew from the power company was working on power lines near the customer’s premises in the course of which two wires momentarily made contact, causing a power failure and a condition known as “single phasing”. During the “single phase” condition, the compressor motor of the customer’s air conditioner was damaged. At the time of these events, there was in existence certain tariffs of the appellant utility company which had been filed with and approved by the Public Service Commission. Included therein was the following regulation:
“Motor Regulation: All motors connected to the Customer’s Installation shall be equipped with satisfactory starting devices to prevent abnormal voltage fluctuations, and shall be provided with devices which will protect the motor installation against under-voltage, overload, phase failure and short circuit.”
The complaint alleged that the power company had negligently caused the wires to come in contact with one another resulting in damage to the compressor motor. The answer denied negligence and affirmatively asserted that the customer had failed to protect its motor with the protective devices required under the tariff regulation, and that the customer’s failure to follow this regulation was either the sole cause or a proximately contributing cause to the alleged loss. Upon trial, the court found that the power company employees had been guilty of negligence in causing or permitting the two wires to come into con *197 tact, resulting in damage to the customer’s compressor motor, and that the customer had provided devices to protect the motor which, while not preventing the damage, had not been shown to be inadequate or negligently installed.
The initial and primary point for our consideration concerns (1) the effect of, and (2) the construction to be placed upon, the tariff regulation above quoted.
The tariff regulation, having been approved by the Public Service Commission, when enforced without discrimination is binding upon the consumer unless it is plainly unreasonable or outrageous in its general operation. Florida Power & Light Co. v. State ex rel. Malcolm, 1932, 107 Fla. 317, 144 So. 657. No suggestion has been made here that such regulation is unreasonable or outrageous in its general operation.
The regulation must be construed in a way which will render it reasonable. The question is whether the regulation requiring that motors be provided with devices which will protect the motor installation against under-voltage, overload, phase failure and short circuit is to be construed as requiring protective devices which will absolutely prevent damage to the motor installation due to any of the named causes, or whether it requires only such protective devices as are reasonably adequate to afford protection from damage from such sources. Obviously, if the regulation requires a protective device which absolutely protects the motor from power fluctuations or power failures, then the customer’s complaint of motor damage from such a cause is eo instante an admission of having violated the regulation. Assuming (without deciding) that the customer’s violation of such regulation would preclude a recovery for the loss, then by means of such unilateral tariff the public utility has effectively immunized itself from any liability for damage to a customer’s electrical motor even though the power fluctuation or power failure is due to the utility’s own negligence. This seems to us to bring about an unjust result. Consequently, we feel that the proper construction to be placed upon such regulation is that the customer is required to provide the motor with such protective devices as will reasonably protect the motor installation against under-voltage, overload, phase failure and short circuit.
The second point for our consideration is whether the court’s verdict for the plaintiff was supported by the evidence, particularly as to whether the customer’s damaged air conditioner compressor had contained any safety- device to reasonably protect it against “single phasing”. The principal witness on behalf of the plaintiff customer was its chief engineer and vice president, Mr. Knott, who is a professional engineer with a number of years experience in electrical engineering. He expressed the opinion that the damage to the compressor motor was caused not only by the single phasing but also by a high-voltage transient condition within the motor windings occurring because of the momentary loss of power when the two power wires came into contact with one another. Appellant points out that upon cross examination this witness testified that the air conditioner did not have on it any equipment or device to protect against single phasing, yet the record discloses that on both direct and redirect examination this witness testified in substance that the compressor motor was protected against damage due to single phasing with a device of the type which was in general use and application throughout the country on compressor motors of the size involved here. Although this somewhat technical testimony does appear to present some conflicts, the evidence before the trial court was legally sufficient to sustain a finding by the court, as the trier of fact, that the plaintiff consumer had complied with the power company’s regulation (as we have here *198 construed it) and that the defense of noncompliance had not been established.
The judgment is affirmed.
WALDEN, J., and MORROW, RUSSELL O., Associate Judge, concur.