427 So.2d 716 (1983)
PAN AMERICAN WORLD AIRWAYS, INC., Appellant,
v.
FLORIDA PUBLIC SERVICE COMMISSION and Florida Power and Light Company, Appellees.
No. 62077.
Supreme Court of Florida.
February 17, 1983.
*717 Edward P. de la Parte, Jr. of de la Parte & Gilbert, Tampa, for appellant.
William S. Bilenky, Gen. Counsel and Bonnie Enneking Davis, Staff Counsel, Florida Public Service Com'n, Tallahassee, and Jay W. Molyneaux and Morris E. Shelkofsky, Jr., Florida Power & Light Company, Miami, for appellees.
McDONALD, Justice.
This case comes to us on direct appeal from a final order of the Florida Public Service Commission (PSC). We have jurisdiction pursuant to article V, section 3(b)(2), Florida Constitution, and we affirm the holding of the PSC.
In its final order, the PSC found the following facts, as stipulated to by the parties:
National Air Lines (National) and Pan American World Airways, Inc. (Pan Am) were customers of Florida Power and Light (FPL) for many years. In January 1980 Pan Am and National merged. In February 1980 Pan Am informed FPL of the merger and that Pan Am was assuming responsibility for National's accounts with FPL. FPL responded with a request for a deposit of $206,000, advising Pan Am that it was considered a new customer insofar as the National accounts were concerned and that deposits were routinely required for service to new customers. Pan Am replied that it was not a new customer and therefore FPL had no right to require a deposit. Unable to resolve this matter, the parties filed a complaint with the PSC on November 30, 1981. The parties stipulated to the facts and record and waived an evidentiary hearing.
Between the time of the original deposit request and oral argument, FPL recalculated the amount of the deposit to a total of $361,095. Although Pan Am challenged the basis for the increase over the original $206,000 demand, the PSC found the recalculated deposit demand to be justified based on the recent average two-month bill for the accounts in question. The PSC ordered Pan Am to post a deposit of $361,095 within thirty days of the order to insure continuous service from FPL, but stayed this order pending appeal and upon the posting of a supersedeas bond by Pan Am in the full amount of the deposit plus 15%.
We begin by noting the narrow scope of this Court's review of orders of the Florida Public Service Commission. We have only to determine whether the PSC's action comports with the essential requirements of law and is supported by substantial competent evidence. Florida Telephone Corp. v. Mayo, 350 So.2d 775 (Fla. 1977). The burden is upon appellants to overcome the presumption of correctness attached to orders of the PSC. Surf Coast Tours, Inc. *718 v. Florida Public Service Commission, 385 So.2d 1353 (Fla. 1980); Fargo Van & Storage, Inc. v. Bevis, 314 So.2d 129 (Fla. 1975).
Pan Am raises four primary issues in urging reversal of the PSC's order. Three of these may be disposed of without extensive discussion. The fourth argument, set forth more fully below, also fails upon close examination to overcome the presumption of correctness with which the PSC's order comes before this Court.
First, Pan Am argues that the PSC erred in determining that Pan Am's merger with National did not prohibit FPL from requiring security deposits on National's old accounts. No rule of the PSC gave National an enforceable right to continued deposit-free service from FPL; likewise, there was no contractual agreement to this effect. Since the utility would have been within its rights to require new or additional deposits from National prior to the merger, it follows that Pan Am acquired, as a result of the merger, no proprietary interest in the privilege of deposit-free accounts.
Similarly ineffectual is Pan Am's second contention, i.e., that the PSC erred in determining that FPL's deposit policy was reasonable and nondiscriminatory. The primary concern reflected in the PSC's regulation of public utility security deposits appears to be protecting the masses of utility customers from increased rates resulting from large commercial consumers defaulting on their payments. With this policy in mind, we cannot say that the PSC departed from the essential requirements of law or was not supported by substantial competent evidence in reaching its conclusion that FPL's policy of requiring new deposits following corporate name changes was reasonable. We note, as did the PSC, that FPL uses the name change on accounts as a "triggering" device which shifts the burden to the utility customer to show that there has been no actual change in the corporate entity responsible for the account. National, the corporate entity previously responsible for the accounts on which FPL now seeks deposits from Pan Am, has ceased to exist as a separate corporation as a result of its merger into Pan Am. § 607.231(3), Fla. Stat. (1979). The PSC reasonably concludes that Pan Am, having acquired the assets and liabilities of National, is likely to have different financial capabilities than it did before the merger. Thus, FPL was not required to credit the newly acquired accounts with the good payment record Pan Am had established on its old accounts with FPL.
While reasonable on its face, FPL's deposit policy must also be applied without discrimination. Demeter Land Co. v. Florida Public Service Co., 99 Fla. 954, 128 So. 402 (1930); Florida Power Corporation v. Continental Testing Laboratories, Inc., 243 So.2d 195 (Fla. 4th DCA 1971). See also § 366.03, Fla. Stat. (1981). Pan Am argued that FPL discriminatorily applied its new-deposit policy against Pan Am, while waiving deposits for at least twenty-one other commercial accounts. FPL countered that the twenty-one deposit waivers were inadvertent and, in light of the enormous number of applications for service it receives, did not reflect a discriminatory intent toward Pan Am. However we ourselves might have weighed this evidence, we cannot say that the PSC lacked substantial competent evidence in concluding that FPL's policy was nondiscriminatorily enforced.
Pan Am's third contention is that the PSC's acceptance of inadmissible evidence and the failure to designate separately findings of fact and conclusions of law in its final order impaired the fairness of the proceeding. On the contrary, we find that Pan Am received a fair hearing in this cause and that the PSC's final order is procedurally correct. The error, if any, in admitting hearsay evidence in the form of newspaper articles on Pan Am's financial health was harmless because the same financial data was contained in Pan Am's annual report which was admitted without objection. The parties stipulated to virtually all the facts of this dispute. In addition the final order included an appendix in which the PSC expressly accepted or rejected *719 each of Pan Am's proposed findings of fact. The final order sets forth its conclusions of law with sufficient clarity to allow us full, informed review. Pan Am was afforded due process in compliance with the essential requirements of the law.
We come now to the most troublesome of the issues raised by Pan Am in this appeal. The question presented is whether the PSC erred in determining that FPL's applicable deposit policy did not have to be enacted as a rule in its tariff in order to be enforceable. Research indicates to us a dearth of relevant case law on point.[1] Thus, we are faced with a matter of construction of an administrative rule.
Pan Am insists that the PSC's general rules regarding public utilities' tariffs[2] and the filing thereof with the PSC,[3] when read in conjunction with the PSC's definition of "rules and regulations,"[4] clearly require all utility company policies of general application, relating to customer service, to be promulgated as regulations in the company's tariff subject to approval of the PSC. In particular, Pan Am argues that Florida Administrative Code Rule 25-6.33(2)(a) requires FPL to adopt as a formal regulation its definition of "new customer," as well as all its policies relating to deposits. The PSC, however, interprets its rule on customer deposits, Florida Administrative Code Rule 25-6.97, as containing an exclusive statement of the information on deposits which must be included in the company tariffs. Rule 25-6.97 requires that each company's tariff contain the company's specific criteria for determining the amount of initial deposit. The rule contains no mention of any other tariff requirements.
We have long recognized that the administrative construction of a statute by an agency or body responsible for the statute's administration is entitled to great weight and should not be overturned unless clearly erroneous. State ex rel. Biscayne Kennel Club v. Board of Business Regulation of Department of Business Regulation, 276 So.2d 823 (Fla. 1973). The same deference has been accorded to rules which have been in effect over an extended period[5] and to the meaning assigned to them by officials charged with their administration. State Department of Commerce, Division of Labor v. Matthews Corporation, 358 So.2d 256 (Fla. 1st DCA 1978). Administrative agency expertise in regulatory interpretation has been similarly acknowledged in the federal courts. In Curtis v. Taylor, 625 F.2d 645, 654 (5th Cir.), modified, rehearing denied, 648 F.2d 946 (5th Cir.1980), the circuit court of appeals held that an agency's interpretation of a regulation it has promulgated is entitled to deference when the meaning of the regulation is not clear. The fifth circuit has also concluded that if an agency's interpretation of its own regulation is *720 merely one of several reasonable alternatives, it must stand even though it may not appear as reasonable as some other alternative. Expedient Services, Inc. v. Weaver, 614 F.2d 56 (5th Cir.1980). The PSC's reading of its rules regarding the required content of public utility tariffs has not been shown to be clearly erroneous. Thus, we conclude that on this issue, as on the other points raised, Pan Am has failed to demonstrate that the order appealed from departs in any way from the essential requirements of law. Nor has the order been shown to be unsupported by substantial competent evidence.
Having thus considered the briefs and oral arguments of Pan Am, the PSC, and FPL, we affirm the PSC's final order.
It is so ordered.
ALDERMAN, C.J., and BOYD and EHRLICH, JJ., concur.
OVERTON, J., dissents with an opinion, in which ADKINS, J., concurs.
OVERTON, Justice, dissenting.
I dissent. By this decision, this Court approves a Public Service Commission order that Florida Power and Light be allowed to demand an increased security deposit from Pan American World Airways, a supposedly new customer of the utility, even where the utility's tariffs fail to clearly indicate when an old customer becomes a new customer for deposit purposes. Neither the financial condition nor the credit standing of Pan Am were considered by the utility in its decision to require a security deposit in the instant case. Instead, the utility's continued waiver of this substantial security deposit was dependent on the utility's definition of the term "new account." In my view, the accounts in this case are not new, nor is the customer, Pan Am, new. The "new account" terminology, as applied here, is nothing but a subterfuge to obtain additional deposits from this old customer. Permitting the utility to waive the deposit requirements for some old customers and seek additional deposits from other old customers on the basis of the utility's interpretation of "new accounts" rather than on a determination of what is necessary to protect the public in light of the customer's credit history and present financial condition, results in arbitrary treatment to its customers. The utility policy at issue here also puts a new business with an extremely good credit history and financial condition at a distinct disadvantage with the "old customer." I find no rational basis for the distinction as applied in this case and conclude that the Public Service Commission order fails to comport with the essential requirements of law and violates the equal protection clause of the fourteenth amendment of the United States Constitution.
ADKINS, J., concurs.
NOTES
[1] The three cases cited in the PSC's brief as controlling are inapposite. The most recent of these, Corporation de Gestion Ste-Foy, Inc. v. Florida Power & Light Co. 385 So.2d 124 (Fla. 3d DCA 1980), does not involve utility tariffs or rule-making at all. The appellant had sought a declaratory judgment that the power company was estopped from collecting amounts it had negligently underbilled. The district court held merely that public utilities were not only permitted, but required, to collect undercharges from established rates. "Established" rates means rates formally adopted by the PSC. Similarly, in Florida Power Corp. v. Continental Testing Laboratories, Inc., 243 So.2d 195 (Fla. 4th DCA 1971), the court held that a power company's tariff regulation, having been approved by the PSC, when enforced without discrimination is binding upon a consumer unless plainly outrageous or unreasonable in its general operation. In Florida Power & Light Co. v. State ex rel. Malcolm, 107 Fla. 317, 144 So. 657 (1932), this Court upheld as reasonable a public utility's duly adopted and promulgated regulation prohibiting consumers from reselling gas or electricity. Although the procedure followed by the utility in adopting this regulation is not described, the language used by the Court suggests something more akin to formal rule-making than the purely internal policy making utilized by FPL in the present case.
[2] Fla. Admin. Code Rule 25-6.33.
[3] Fla. Admin. Code Rule 25-9.04.
[4] Fla. Admin. Code Rule 25-9.02(3).
[5] Florida Administrative Code Rule 25-6.97, upon which the PSC relies, has been in effect in its present form since June 1980. It is the most recently amended of the administrative rules cited by the parties.