# HCA HEALTH SERVICES OF FLORIDA, INC. v. DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES

## Case No. 83-3330R

State of Florida, Division of Administrative Hearings

September 27, 1984

### APPEARANCES OF COUNSEL

**Donna H. Stinson** and **Thomas Sheehan, III**, for petitioner.

**M. Steven Turner** for respondent.

### OPINION

WILLIAM E. WILLIAMS, Hearing Officer.

Pursuant to notice, the Division of Administrative Hearings, by its duly designated Hearing Officer, William E. Williams, held a public hearing in this cause on February 8, 1984, in Tallahassee, Florida.

This proceeding involves a challenge filed by Petitioner, HCA Health Services of Florida, Inc. ("Petitioner"), to the validity of Rule 10-17.008(1)(a)(1), Florida Administrative Code. The challenged rule was adopted by the Department of Health and Rehabilitative Services ("HRS"), and defines Brevard County as a single subdistrict for purposes of certificate of need review for acute care hospital beds. Petitioner contends that the rule is invalid as arbitrary, capricious, and not rationally related to the need for planning for health services in the area.

At the final hearing in this cause, Petitioner called Phillip Rond, William F. Madden, Gene Nelson, Carol Anderson, and Phil Unger as its witnesses. Petitioner offered Petitioner's Exhibits 1 through 12, which were received into evidence. Respondent called Steve Windham as its only witness, and offered Respondent's Exhibits 1 through 19, which were received into evidence.

Counsel for both Petitioner and Respondent have submitted proposed findings of fact for consideration by the Hearing Officer. To the extent that those proposed findings of fact are not included in this order, they have been specifically rejected as being either irrelevant to the issues presented for determination, or as not having been supported by evidence of record.

## FINDINGS OF FACT

Rule 10-17.008(a)(1), Florida Administrative Code, as adopted by HRS, defines Brevard County as a single subdistrict for purposes of certificate of need review for acute care hospitals. Brevard County is located in HRS District VII. Petitioner has applied for a certificate of need to build a hospital in Brevard County. Proceedings concerning this certificate of need are currently pending before the Division of Administrative Hearings. The challenged rule will be applied by HRS in determining whether to grant or deny Petitioner's application for a certificate of need. Petitioner is, therefore, substantially affected by Rule 10-17.008.

Rule 10-5.11(23), Florida Administrative Code, which is not challenged in this proceeding, established a "uniform bed need methodology" for establishing the need for hospital beds in Florida. By application of this rule, HRS derives a total number of beds needed for each of 11 HRS districts statewide.

HRS is required by Section 381.494(6)(c)(1), Florida Statutes, to review certificate of need applications based on applicable district plans developed by local health councils pursuant to Section 381.494(7)(b)1, Florida Statutes. HRS is required to develop as its only rule the elements of any approved district plan which HRS considers necessary to the review of certificate of need applications. It is this statutory requirement which led HRS to adopt Rule 10-17.008(1)(a)(1), Florida Administrative Code, which is challenged in this proceeding.

Rule 10-5.11(23)(d), Florida Administrative Code, requires local health councils, as necessary, to adopt acute care service subdistrict designations according to guidelines developed by HRS. These guidelines were developed by HRS and were sent to local health councils in April, 1983. These guidelines provided as follows:

177

1. Local Health Council District should be divided into subdistricts for purposes of planning acute care general hospital services.

2. Rural subdistricts (i.e., those outside SMSAs) shall be county or multi-county county areas.

3. Urban subdistricts (i.e., those including all or part of an SMSA) may be multicounty, county or subcounty areas. As appropriate, an urban subdistrict may include part of an urban county and all of an adjoining rural county.

4. All subdistrict designations shall conform to population base zone boundaries. Each urban subdistrict shall contain within it a sufficient number of population base zones to meet the following size criteria:

Minimum 150,000 to 200,000 population in base year 1980 unless the SMSA population is less than 150,000, in which case SMSA = subdistrict.

Maximum geographic area 25 miles diameter along longest axis.

5. Rural subdistricts shall be limited in size such that no area is greater than 60 miles in diameter along its longest axis, or 45 minutes driving time to a general hospital for 90% of the population.

6. To the extent possible, subdistrict designations shall take into account existing patient flow patterns, and specialized services.

7. In dividing the total number of beds allocated to the district among subdistricts and in specifying bed distribution by service category, the Local Health Council shall take into account the level of care offered by existing facilities, net flow to facilities, the age characteristics of the population as these relate to service needs and the potential degree of seasonal peak demands (as per the proposed acute care rule).

Since the HRS "uniform bed need methodology" establishes only the total number of beds needed districtwide, this number must be allocated districtwide by bed type and location by the local health councils through designation of subdistricts in their local plans. In August, 1983, the local health council for District VII submitted to HRS its local health plan, entitled "Policies and Priorities for Community Medical Facilities Component." The plan identified 23 policies, one of which was the designation of subdistricts along county lines. Of the 23 policies enumerated by the local health council for District VII, HRS adopted in Rule 10-17.008 only the policy designating subdistricts along county lines.

The HRS guidelines were intended to acquaint local health councils

**178**

with the types of factors to be considered in setting subdistrict lines. None of these factors were strictly binding, and the councils were intended to balance the various criteria according to local consideration such as geography, population dynamics, and availability of and access to existing services. For example, Brevard County had a population in 1980 of 273,000 and is approximately 78 miles long. It was, therefore, impossible to strictly adhere to the population and geographic criteria contained in the HRS guidelines. The local health council resolved this conflict by determining, based upon its data and experience, that residents of Brevard County had experienced no problems with access to or availability of hospital services. Hospital facilities in Brevard County are well distributed. While Brevard County is 78 miles long, a large portion of its area in both the northern and southern parts of the county are sparsely populated, consisting of marshland, the government space center, and a military base.

Neither HRS nor local health councils were required to further subdivide a county unit. County units are generally accepted as reasonable subdivisions for health planning purposes. Many populous counties throughout Florida were designated by their respective local health councils as subdistricts. These include Broward, Hillsborough, Escambia, Polk, Manatee, and Sarasota counties.

At the time the challenged rule was adopted, there existed no reliable subcounty population projection by age and sex cohorts. Use of historical data for health planning assumes a constant growth pattern, which is not the case in a rapid growth area such as Brevard County. In rapid growth areas, historical projections are more likely to prove unreliable. Because of its continuing transition from a rural to an urban area, there have been difficulties encountered in projecting Brevard County population by age cohorts. Accordingly, the local health council, in determining the designate Brevard County as a subdistrict, determined that there were no satisfactory data available from which to accurately subdistrict on a subcounty basis.

Allocation of bed need in District VII has been historically accomplished by county units, even when previously existing health system agencies were in effect. Subdivisions below the county level were considered only for the purpose of evaluating utilization or occupancy thresholds.

The local health council for District VII consulted with a task force of local health care providers in the process of formulating the subdistricting component of its local health plan. A representative of Petitioner served on that task force. The issue of subdistricting was

**179**

discussed at three task force meetings, at three meetings of the local health council's Committee on Planning and Development, and at three Board meetings during July through October, 1983. As a result of these deliberations, it was determined that the historical county unit would be used for subdistricting purposes, until more accurate data became available to further subdivide the county's District VII.

## CONCLUSIONS OF LAW

1. The Division of Administrative Hearings has jurisdiction over the subject matter of, and the parties to, this proceeding. Section 120.56, Florida Statutes.

2. Section 381.494(7)(b)1, Florida Statutes, requires a local health council to:

> Develop a district plan, using uniform methodology as set forth by [HRS], which will permit each local health council to develop goals and criteria based on its unique local health needs, such as the special health needs of rural areas and medically underserved communities. The district plan shall be submitted to [HRS] and updated periodically and shall be in a form prescribed by [HRS]. The elements of an approved district plan which are necessary to the review of any certificate-of-need application shall be adopted by [HRS] as a part of its rules. . . .

3. Where, as here, an agency is given broad rulemaking authority by statute, ". . . the validity of regulations promulgated thereunder will be sustained so long as they are reasonably related to the purposes of the enabling legislation. . . ." *Florida Beverage Corporation v. Wynne*, 306 So.2d 200, 202 (Fla 1st DCA 1975). Additionally, it has been held that ". . . administrative construction of a statute by an agency or body responsible for the statute's administration is entitled to great weight and should not be overturned unless clearly erroneous." *Pan American World Airways v. Florida Public Service Commission*, 427 So.2d 716, 719 (Fla. 1983). As pointed out by the court in *Agrico Chemical Company v. State*, 365 So.2d 759, 763 (Fla. 1st DCA 1979), in a rule challenge proceeding:

> . . . the hearing officer must look to the legislative authority for the rule and determine whether or not the . . . rule was encompassed within that grant. The burden is upon one who attacks the . . . rule to show that the agency . . . [has exceeded] its authority; that the requirements of the rule are not appropriate to the end specified in the legislative act; that the requirements contained in the rule are not reasonably related to the purpose of the enabling legislation or that

180

the proposed rule or the requirements thereof are arbitrary or capricious.

A capricious action is one which is taken without thought or reason or irrationally. An arbitrary decision is one not supported facts or logic, or despotic. Administrative discretion must be reasoned and based upon competent substantial evidence. Competent substantial evidence has been described as such evidence as a reasonable person would accept as adequate to support a conclusion.

4. In *Department of Health and Rehabilitative Services v. Framat Realty, Inc.*, 407 So.2d 238, 241-242 (Fla. 1st DCA 1981), the court held that:

. . . the APA plainly regards rules as the valuable end point in the agency's development of policy. Rules represent an agency's considered decision on issues left to the agency's decision by a substantive act of the legislature. If we are to regard seriously the incentives for rulemaking under the APA scheme, and if we are to credit the deliberative process that the legislature has prescribed for the development of agency policy, then surely a interpretative rule emerging from this process should be accorded a most weighty presumption of validity. Otherwise the elaborate statutory scheme, pressing for rulemaking and prescribing how it shall be accomplished with maximum public and private participation, has no productive purpose, and it has become only a snare for agency action, a device for the evasion, avoidance, or postponement of effective agency action in its authorized field of responsibility. When as here an agency has responded to rulemaking incentives and has allowed affected parties to help shape the rules they know will regulate them in the future, the judiciary must not, and we shall not, overly restrict the range of an agency's interpretative powers. Permissible interpretations of a statute must and will be sustained, though other interpretations are possible, and may even seem preferable action according to some views. If the rule binds too tightly to suit them [litigants] have their proper remedy in the representative and politically responsive branches, the legislative or executive, but not in the judiciary, nor in Section 120.56 rule challenge proceedings before a hearing officer.

5. Petitioner contends that there existed data which the local health council and HRS should have considered which would have facilitated the subdistricting of Brevard County on a subcounty basis. However, it is apparent from the record, that the local health council and HRS did not trust the accuracy of data on less than a countywide basis, choosing instead to rely on historical data which had been used to

allocate bed need countywide. The fact that there arguably existed data on a subcounty basis does not render the challenged rule arbitrary and capricious. As pointed out by the court in *Department of Professional Regulation v. Durrani,* case No. AX-329 (Fla. 1st DCA, August 16, 1984) an ". . . agency's interpretation of a statute need not be the sole possible interpretation or even the most desirable one; it need only be within the range of possible interpretations. . . ."

Accordingly, based upon the foregoing Findings of Fact and Conclusions of Law, it is

ORDERED:

That Petitioner having failed to establish by a preponderance of the evidence the invalidity of the challenged rule, the petition filed in this cause be, and the same is hereby, DISMISSED.