# MYERS v DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES,

# SEVILLA v DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, and

# BARGER v DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES

## Case Nos. 85-3308R, 85-3309R, and 85-3339R

State of Florida, Division of Administrative Hearings

November 20, 1985

## APPEARANCES OF COUNSEL

**Dennis H. Rehak** for petitioners.

**John S. Miller,** Department of Health and Rehabilitative Services, for respondent.

## OPINION

DONALD D. CONN, Hearing Officer.

### FINAL ORDER

Pursuant to notice, a final hearing was held in Tallahassee on October 23, 1985 before Donald D. Conn, a duly designated Hearing Officer of the Division of Administrative Hearings. The parties were represented by counsel.

Petitioners have challenged the validity of Rules 10D-42.22, 42.23 and 42.24, *Florida Administrative Code,* and contend that these rules are arbitrary and capricious. At the hearing, these three cases were consolidated. Petitioners moved, *ore tenus,* to amend paragraphs three in their Petitions to conform the reference in paragraph 1 to the CMI Intoxilyzer, Model 4011AS, an said motion was granted. A ruling was reserved on Respondent's objection to Petitioners' introduction of Exhibits P-6, 7 and 8 to allow a review of those exhibits. This review having been completed and the grounds for objection considered, these exhibits are hereby admitted, and therefore a total of ten (10) exhibits have been received on behalf of Petitioners. Respondent did not offer any exhibits. Dr. Clark Davidson was called by Petitioners to testify and was accepted as an expert in pharmacology and biochemistry. Respondent called Dr. Howard R. Rarick to testify, and he was accepted as an expert in breath and blood testing.

The Respondent chose to preserve the record of the final hearing with a tape recorder and no transcript has been prepared. By agreement of the parties, posthearing findings of fact and memoranda were to be filed within fifteen days of the conclusion of the hearing, and a ruling on each proposed finding of fact that has been filed has been made in this Final Order, as reflected in the attached Appendix.

### FINDINGS OF FACT

1. Petitioners are defendants in criminal cases presently pending in Lee County, Florida, having each been charged with the offense of driving while under the influence of an alcoholic beverage. Subsequent to their arrests, they took a breathalyzer test on a CMI Intoxilyzer,

**249**

Model 4011AS, and have been informed that the prosecution intends to introduce evidence derived from these tests at their trials.

2. Respondent has adopted Rules 10D-42.22, 42.23, and 42.24, *Florida Administrative Code*, under the authority of Sections 316.1932(1)(b)1, 316.1934(3), 327.352(1)(d) and 327.354(3), *Florida Statutes* (1984 Supp.) Rules 10D-42.22 and 42.23 provide as follows:

10D-42.22 Chemical Breath Testing Methods—Approval. Chemical breath testing methods for determining blood alcohol content shall be approved by the Department, based on scientific principles which will establish performance requirements and methods for evidential breath testing. Evidential breath testing involves methods which measure the alcohol content of deep lung samples of breath with sufficient accuracy for evidential purposes . . . and for which instructors have been trained as stipulated in 10D-42.27.

10D-42.23 Registration—Chemical Test Instruments or Devices. All chemical breath test instruments or devices used for breath testing under provisions of Chapter 316 and 327, Florida Statutes, shall be previously checked, approved for proper calibration and performance, and registered by authorized personnel of the department, by trade name, model number, serial number and location, on forms provided by the Department. All such chemical test instruments or devices registered hereunder shall be checked at least once each calendar year (January 1 through December 31) for accuracy and reproducibility.

Rule 10D-42.24 specifies the operational and preventive maintenance procedures for approved chemical breath testing instruments enumerated therein, including the CMI Intoxilyzer, Model 4011AS.

3. Before approving a chemical breath testing instrument and including it in Rule 10D42.24, Respondent conducts a series of tests on a sample instrument provided by the manufacturer. These tests include vapor and acetone tests as well as blood-breath correlations. The purpose of these tests is to determine if the instrument gives a reliable measurement of blood alcohol levels based on deep lung samples of breath. All manufacturers ad all states use a ratio of 2100 to 1 in calibrating these instruments. That is, the level of alcohol in the lungs as measured by the instrument is multiplied by 2100 to derive the blood alcohol content level. If the instrument proves reliable in determining a known blood alcohol level within acceptable tolerance levels, it is added to the approved list.

4. After an instrument is added to the approved list, each individual device must also be tested by Respondent before it can be used in this

250

state for evidentiary purposes. The purpose of these tests is to exactly calibrate each device since there is usually a slight variation between devices from the 2100 to 1 general ratio. Required monthly preventive maintenance and annual inspection of each device insures that the specific calibration for the device is maintained, or corrected if necessary. Operators of these devices must complete a forty hour training program and also an annual six hour requalification course.

5. Respondent's rules do not set forth or require the use of this 2100 to 1 ratio in the calibration process. However, since this is the calibration ratio used by manufacturers, Respondent does test that ratio and make adjustments in individual instrument calibrations, when necessary.

6. The accuracy of blood alcohol level measurements obtained by using these instruments can be affected by factors such as a person's body weight and composition, individual absorption and elimination rates, the time the measurement is made in relation to the time when the person was driving, and the time elapsed since alcohol was consumed. However, by using estimates such as the "elimination rate" of a person and extrapolating back to the time of driving from the time the test is administered, blood alcohol levels which existed while driving can be estimated.

## CONCLUSIONS OF LAW

The Division of Administrative Hearings has jurisdiction over the parties and subject matter in this case. Section 120.56, *Florida Statutes.*

Petitioners have standing to challenge Rules 10D-42.22, 42.23 and 42.24 because the effect of these rules on them has been real and immediate, and represents an "injury in fact." Petitioners have been arrested for driving while under the influence of alcoholic beverages and the results of tests administered on chemical breath testing instruments approved under these rules will be used for evidentiary purposes against Petitioners. As such, their injury is real, immediate and specific and clearly within the zone of interest protected by statute. See *Department of Offender Rehabilitation v. Jerry2rf, 353 So.2d 1230, 1235-1236 (Fla. 1st DCA 1978), cert. den. 359 So.2d 1215 (Fla. 1978); All Risk Corporation of Florida v. State, Department of Labor and Employment Security,* 413 So.2d 1200, 1202 (Fla. 1st DCA 1982); *Montgomery v. Department of Health and Rehabilitative Services,* 468 So.2d 1014 (Fla. 1st DCA 1985).

The validity of rules normally will be sustained as long as they are reasonably related to the purpose of the enabling legislation and are

not arbitrary or capricious. *Florida Beverage Corporation v. Wynne,* 306 So.2d 200 (Fla. 1st DCA 1975); *Agrico Chemical Company v. Department of Environmental Regulation,* 365 So.2d 759 (Fla. 1st DCA 1978), cert. den. 376 So.2d 74 (Fla. 1979); *Grove Isle, Ltd. v. State, Department of Environmental Regulation,* 454 So.2d 571 (Fla. 1st DCA 1984). As stated by the Court in *Department of Professional Regulation, Board of Medical Examiners v. Durrani,* 455 So.2d 515 (Fla. 1st DCA 1984):

> The well recognized general rule is that agencies are to be accorded wide discretion in the exercise of their lawful rulemaking authority, clearly conferred or fairly implied and consistent with the agencies' general statutory duties. *Florida Commission on Human Relations v. Human Development Center,* 413 So.2d 1251 (Fla. 1st DCA 1982). An agency's construction of the statute it administers is entitled to great weight and is not to be overturned unless *clearly erroneous. Pan American World Airways, Inc. v. Florida Public Service Commission,* 427 So.2d 716 (Fla. 1983); *Barker v. Board of Medical Examiners,* 428 So.2d 720 (Fla. 1st DCA 1983). Where, as here, the agency's interpretation of a statute has been promulgated in rule-making proceedings, the validity of such rule must be upheld if it is reasonably related to the purposes of the legislation interpreted and it is not arbitrary and capricious. The burden is upon petitioner in a rule challenge to show by a preponderance of the evidence that the rule or its requirements are arbitrary and capricious. *Agrico Chemical Co. v. State, Department of Environmental Regulation,* 365 So.2d 759 (Fla. 1st DCA 1978); *Florida Beverage Corp. v. Wynne,* 306 So.2d 200 (Fla. 1st DCA 1975). Moreover, the agency's interpretation of a statute need not be the sole possible interpretation or even the most desirable one; it need only be within the range of *possible* interpretations. *Department of Health and Rehabilitative Services v. Wright,* 439 So.2d 937 (Fla. 1st DCA 1983) (Ervin, C.J., dissenting); *Department of Administration v. Nelson,* 424 So.2d 852 (Fla. 1st DCA 1982); *Department of Health and Rehabilitative Services v. Framat Realty, Inc.,* 407 So.2d 238 (Fla. 1st DCA 1981). . . . See also *General Telephone Co. of Florida v. Florida Public Service Commission,* 446 So.2d 1063, 1067 (Fla. 1984).

The party contesting the validity of a rule carries the burden of proving a preponderance of the evidence that the challenged rule is without authority, arbitrary and capricious. *Humana, Inc. v. Department of Health and Rehabilitative Services,* 469 So.2d 889 (Fla. 1st DCA 1985); *Department of Natural Resources v. Sailfish Club of Florida, Inc.,* 473 So.2d 261 (Fla. 1st DCA 1985). In this case, Petitioners have failed to meet this burden.

Respondent was given broad statutory authority to approve satisfactory methods and techniques for testing a person's breath to determine if he is in violation of Section 316.193(1), *Florida Statutes,* which establishes the blood alcohol level at which a person is deemed to be guilty of the offense of driving under the influence. The evidence in the record establishes that Respondent has carried out this authority in a reasonable manner and has implemented a thorough program for approving types of instruments, rechecking the calibrations on individual instruments and insuring operator proficiency.

As with any indirect measure of blood alcohol level, the measurement obtained using a chemical analysis of a person's breath is an estimate, within statistically reliable limits, of the actual blood alcohol level. This legislature has authorized this indirect measure, and Respondent has not acted arbitrarily or capriciously in carrying out its statutory responsibility to approve satisfactory methods and techniques for making this indirect measure.

The evidences does not support Petitioners' contention that the 2100 to 1 ratio is used for all persons being tested on all devices. To the contrary, individual devices are calibrated to determine if the manufacturer's calibration is 2100 to 1 is accurate. If it is not, the device's calibration is adjusted. Contrary to Petitioners' assertion that it is impossible to relate blood alcohol content at the time of the test with content while driving, the evidence established that estimates can be made with the use extrapolation factors. Test results are statistically acceptable estimates which may be used for evidentiary purposes, and it therefore cannot be concluded from this record that these instruments lack specificity.

Where, as here, an agency construes the statute in its charge in a permissible way, that interpretation must be sustained though another may be possible or even, in the view of some, preferable. *State, Department of Health and Rehabilitative Services v. Framat Realty, Inc.,* 407 So.2d 238, 241 (Fla. 1st DCA 1981); *Pan American World Airways, Inc. v. Florida Public Service Commission and Florida Power and Light Co.,* 427 So.2d 716, 719 (Fla. 1983). Petitioners have failed to show that Respondent's interpretative rules are clearly erroneous, arbitrary, capricious, or unauthorized. See, *Department of Revenue v. Skop,* 383 So.2d 678 (Fla. 5th DCA 1980); *ABC Liquors, Inc. v. Department of Business Regulation,* 397 So.2d 696, 697 (Fla. 1st DCA 1981).

253

Therefore, based upon the foregoing, it is,

ORDERED THAT:

Rules 10D-42.22, 42.23 and 42.24, *Florida Administrative Code,* are declared to be valid exercises of delegated legislative authority and the relief sought herein by Petitioners is denied.

DONE and ORDERED this 20th day of November, 1985, at Tallahassee, Florida.