BARKETT, Justice.
International Telecharge, Inc. (ITI) appeals an order of the Public Service Commission (PSC) relating to regulation of alternative operator service (AOS) providers.[1] We affirm in part, reverse in part, and remand for further proceedings.
AOS providers supply intrastate long distance operator services primarily to the transient public through subscribing businesses such as hotels, motels, hospitals, and privately owned pay telephones. AOS providers handle all operator-assisted calls and charge a fee based on time and distance with an additional flat fee for operator handling. In some instances they remit a portion of the charge to the subscriber (the hotel, hospital, etc.) in the form of a commission. AOS providers compete with each other by offering higher commissions to their business customers, which are recouped through the prices they charge the callers for operator services. ITI is an AOS provider.
AOS providers are relatively new to Florida and have not been addressed in the statutes governing telephone companies until recently.[2] However, interexchange telephone companies (IXCs) must obtain a certificate of “public convenience and necessity” from the PSC to operate in Florida. Fla.Admin.Code Rule 25-24.470(1) (April 1990); § 364.33, Fla.Stat. (1989). The PSC has been certifying AOS providers under the IXC certification requirements since 1986. Upon application, the PSC may grant a certificate if the PSC determines that issuing the certificate is “in the public interest.” Fla.Admin.Code Rule 25-24.471(3) (April 1990). An applicant for a certificate must also file with the PSC schedules showing the rates for every service it offers. § 364.335(l)(b), Fla.Stat. (1989). Once granted, the PSC has the authority to revoke, suspend, transfer, or amend a certificate. Id. § 364.335(5).[3]
The PSC certified ITI and its proposed tariff in September 1987. However, in February 1988, the PSC initiated a proceeding to determine whether AOS providers in fact serve the public interest because it had received a number of consumer complaints and inquiries about AOS practices. A primary concern was that AOS providers were charging an excessive rate to captive telephone users who were unaware that their calls were being handled by someone other than the local exchange company (LEC). Pending a final determination, the PSC issued temporary orders that imposed certain restrictions, including a rate cap, upon all AOS providers.
The PSC held final hearings on August 8, 9, and 10, 1988, and considered all pending issues. On December 21, 1988, the PSC issued Final Order No. 20489, which ordered: (1) a limitation on charges with a rate cap set at comparable AT & T Communications of the Southern States, Inc. *818 (ATT-C) rates; (2) the refund of the excess rates collected after the initiation of the proceeding in the form of a prospective reduction in rates; (3) compliance with certain operating restrictions and service standards; and (4) that AOS providers route all 0+ [4] long distance calls within a Local Access and Transport Area (LATA) and all 0— [5] calls to the LEC.
ITI moved for reconsideration of Final Order 20489 and requested a stay pending reconsideration, which the PSC granted conditioned on the posting of a bond or corporate undertaking.[6] ITI filed a corporate undertaking, and the PSC allowed ITI to continue charging its previously approved rates subject to a refund of amounts exceeding the rate cap imposed in Final Order No. 20489.[7]
On November 29, 1989, the PSC issued Order on Reconsideration No. 22243, in which it refused to reconsider the rate cap and other requirements, and it further ordered that the rate cap would automatically adjust in accordance with any subsequent rate changes by ATT-C. However, the PSC reversed its ruling that refunds would be by prospective reduction in rates, and instead it ordered ITI to make direct refunds to the entities who were initially billed.
ITI raises four issues in this appeal: (1) A rate cap based on ATT-C rates is unsupported by competent substantial evidence, is confiscatory, and constitutes unlawful delegation of rate-making power; (2) prescribing restrictions and requirements not imposed on ATT-C unlawfully discriminates against AOS providers; (3) requiring that all 0+ intraLATA traffic and 0— calls be exclusively reserved to the LEC is arbitrary and unlawfully discriminates against AOS providers; and (4) ordering direct refunds to the entities originally billed entails such an onerous and expensive process that it must be deemed a patently arbitrary decision.
The first three arguments presented by ITI are predicated on the premise that AOS providers must be treated exactly the same as full service public utilities. For example, ITI argues that setting the rate cap at comparable ATT-C rates was arbitrary and unreasonable because the evidence does not show that ATT-C rates allow AOS providers to earn a reasonable profit.
The PSC is responsible for reviewing utility investment and operating expenses to ensure that rates are fair, just, and reasonable; and it must allow the public utility an opportunity to earn a fair return on its investment. § 364.14, Fla. Stat. (1989).[8] We agree with the PSC, however, that this principle does not apply to AOS providers and that the PSC is justified in treating them differently from ATT-C and local exchange companies.
A public utility has the obligation to serve all customers within its territory, and it can be compelled to make the necessary investment to enable it to meet this obligation. §§ 364.15, 366.05(8), Fla.Stat. (1989). Because the PSC can order the public utility to make such an investment, the PSC is obligated to set rates so that, in light of the regulatory obligations, the public utility will make a fair return on its investment. See Gulf Power v. Bevis, 289 So.2d 401 (Fla.1974).
AOS providers, on the other hand, have no obligation to serve any group. They *819 enter or exit the market at will, and may concentrate their business in the most lucrative areas. They have no continuing relationship with the end users, the callers; and the callers do not choose their services. They are not compelled by law to make any investments. Accordingly, they are not entitled to the assurance of a fair rate of return on their investment under the applicable statutes.
We note that the PSC has the authority to ban AOS providers completely if it determines that they are not in the public interest. This question was addressed at the hearing below, and all interested parties had the opportunity to present evidence. We are satisfied that substantial competent evidence supports the PSC’s determination that AOS providers are only in the public interest if they charge rates at or below ATT-C rates, which is what consumers would pay were AOS providers not in the market.
ITI also argues that tying AOS rates to ATT-C rates is an unlawful delegation of the PSC’s rule-making authority. We do not agree. The PSC ultimately controls both the rate cap and ATT-C rates. Any changes in ATT-C’s rate must be within the range previously approved by the PSC and subject to PSC review. Moreover, any affected person, including an AOS provider, can initiate a proceeding to change the rate cap. Likewise, the PSC can entertain a petition alleging that ATT-C is engaged in predatory practices designed solely to put AOS providers out of business.
In reviewing orders of the PSC, this Court must determine “whether the PSC’s action comports with the essential requirements of law and is supported by substantial competent evidence.” Pan Am. World Airways, Inc. v. Florida Pub. Serv. Comm’n, 427 So.2d 716, 717 (Fla.1983). We are satisfied that the PSC has conformed to this standard in imposing the restrictions in Order No. 22243. We find no merit in ITI’s equal protection or 0 + and 0— traffic arguments. The burden on a party seeking review of a PSC order is to demonstrate that the commission’s determination was arbitrary. Manatee County v. Marks, 504 So.2d 763 (Fla.1987). The PSC’s decision to cap the rate at ATT-C rates was reasonable in light of the PSC’s role in ensuring that the public interest is protected. Competition in the telephone industry is intended to benefit the public, and is not intended to benefit a corporation in derogation of the public interest. Accordingly, we affirm the PSC order on the first three issues.
On the issue of direct refunds, however, we can find no rational explanation for requiring direct refunds, rather than a prospective reduction in rates. In its original order, the PSC recognized that “it appears virtually impossible to refund the money in question to the actual end users who incurred the charges.” Order No. 20489 at 20. We can find no evidence in the record to support the PSC’s change in position. The PSC argues that since the refund at issue covers a lesser period of time and involves only one AOS provider, it is not overly burdensome to require direct refunds. However, ITI faces the same expense and difficulties in locating the transient end users who incurred the original charges as did each AOS provider when the PSC made its decision in Order 20489. At no point in the proceedings was ITI ever led to believe that the PSC would order direct refunds instead of the prospective reduction in rates. Because no new evidence was presented on this issue between Order 20489 and the Order on Reconsideration that requires the direct refunds, the order for direct refunds can only be deemed as a penalty.
Accordingly, we affirm Order 22243 with respect to the rate cap and other restrictions, but reverse that portion of Order 22243 requiring direct refunds to the entities originally billed. We remand this case to the PSC for proceedings consistent with this opinion.
It is so ordered.
SHAW, C.J., and OVERTON, McDonald, GRIMES and KOGAN, JJ., and EHRLICH, Senior Justice, concur.

. We have jurisdiction pursuant to article V, section 3(b)(2) of the Florida Constitution.

. See Chapter 90-244, section 36, Laws of Florida (creating section 364.3376 of the Florida Statutes to regulate operator service), which became effective October 1, 1990. Ch. 90-244, § 50, Laws of Fla. We also note that Congress recently passed similar legislation to regulate interstate operator services. See Telephone Operator Consumer Services Improvement Act of 1990, Pub.L. No. 101-435, 104 Stat. 986 (1990).

.Section 364.335(5), Florida Statutes (1989), provides:
Revocation, suspension, transfer, or amendment of a certificate shall be subject to the provisions of this section; except that, when the commission initiates the action, the commission shall furnish notice to the appropriate local government and to the public counsel.

. The term "0+” is used to designate calls where the caller dials 0 plus the telephone number to complete a long distance call.

. "0 — ” refers to calls where the caller dials 0 and no other digit.

. A corporate undertaking is the unqualified guarantee of a utility to pay any refund and interest which may be ordered by the PSC at such time as the obligation becomes fixed and final. See § 367.021(4), Fla.Stat. (1989) (defining for purposes of water and wastewater systems).

. Only ITI appealed the final order. Since all other AOS providers are complying with the rate cap, only ITI is subject to the refund requirement.

. Section 364.14(1) of the Florida Statutes (1989) provides in pertinent part:
In prescribing rates, the commission shall allow a fair and reasonable return on the telephone company’s honest and prudent investment in property used and useful in the public service.