626 So.2d 660 (1993)
FLORIDA POWER & LIGHT COMPANY, Appellant,
v.
Thomas M. BEARD, etc., et al., Appellees.
No. 79338.
Supreme Court of Florida.
October 28, 1993.
Matthew M. Childs and Jennifer Prior of Steel, Hector & Davis, Tallahassee, for appellant.
Robert D. Vandiver, Gen. Counsel and David E. Smith, Director of Appeals, Florida Public Service Com'n, Tallahassee, for appellees.
Suzanne Brownless of Suzanne Brownless, P.A., Tallahassee, amicus curiae for Air Products and Chemicals, Inc.
GRIMES, Justice.
Florida Power and Light Company (FPL) appeals an order of the Florida Public Service Commission (the Commission) eliminating "regulatory out" clauses from standard offer contracts between electric utilities and qualifying facilities. We have jurisdiction under article V, section 3(b)(2) of the Florida Constitution.
In section 366.81, Florida Statutes (1991), the Legislature set forth the findings and intent underlying the Florida Energy Efficiency and Conservation Act, sections 366.80.85, Florida Statutes (1991). Specifically, the Legislature found that cogenerated power is beneficial to the state and should be encouraged as it provides a more efficient and cost-effective energy conservation system. § 366.81, Fla. Stat. (1991); see also § 366.051, Fla. Stat. (1991). Section 366.051 provides, "The electric utility in whose service area a cogenerator or small power producer is located shall purchase, in accordance with applicable law, all electricity offered for sale by such cogenerator or small power producer... ." Pursuant to section 366.051, the Commission is required to establish guidelines for the *661 purchase of power or energy by public utilities from cogenerators or small power producers and may establish the rates at which a public utility must purchase power or energy from these types of facilities.
The Florida Administrative Code classifies certain cogenerators and small power producers as "qualifying facilities" (QFs). Fla. Admin. Code R. 25-17.080.[1] It is these types of cogenerators and small power producers to which section 366.051 applies. Florida Administrative Code Rules 25-17.080-.091 set forth the manner in which a utility may purchase QF power, one of which is the "standard offer contract."
A standard offer contract is an agreement between a utility and a "small" QF for the purchase of firm capacity and energy. Fla. Admin. Code R. 25-17.0832(3)(a).[2] It sets forth the rates, terms and other conditions pursuant to which the utility will purchase firm capacity and energy from the QF. Fla. Admin. Code R. 25-17.0832(3)(b). The Florida Administrative Code requires each public utility to submit for Commission approval a tariff and standard offer contract for the purchase of firm capacity and energy from small QFs. Fla. Admin. Code R. 25-17.0832(3). Standard offer contracts may be accepted by the small QF in lieu of a separately negotiated contract. Fla. Admin. Code R. 25-17.0832(3)(c).[3]
In October 1990, the Commission directed each investor-owned utility to file its most recent ten-year generation expansion plan, a standard interconnection agreement, and one or more standard offer contracts to purchase capacity from shall QFs to avoid the construction of capacity identified in their plans. Order No. 23625 (Oct. 16, 1990). The standard offer contract submitted by FPL for Commission approval contained the "regulatory out" clause at issue in this case. Regulatory out clauses suspend a utility's payment obligations to QFs to the extent that the utility is not allowed to recover those payments from its customers. The clause in the instant case provides:
Notwithstanding anything in this Contract to the contrary, should FPL at any time during the term of this Contract fail to obtain or be denied the FPSC's authorization, or the authorization of any other regulatory or governmental body which now has or in the future may have jurisdiction over FPL's rates and charges, to recover from its customers all of the payments required to be made to the QF under the terms of this Contract or any subsequent amendment to this Contract, the Parties agree that, at FPL's option, they shall renegotiate this Contract, or any applicable amendment. If FPL exercises such option to renegotiate, FPL shall not be required to make such payments to the extent that FPL's authorization to recover them from its customers is not obtained or is denied. FPL's exercise of its option to renegotiate shall not relieve the QF of its obligation to repay the balance in the Capacity Account. It is the intent of the Parties that FPL's payment obligations under this Contract or any amendment hereto are conditioned upon FPL being fully reimbursed for such payments through the Fuel and Purchased Power Cost Recovery Clause or other authorized rates or charges. Any amounts initially recovered by FPL from its ratepayers but for which recovery is subsequently disallowed by the FPSC and charged back to FPL may be set off or credited against subsequent payments made by FPL for *662 purchases from the QF, or alternatively, shall be repaid by the QF.
Under this clause, should FPL be denied cost recovery for payments made to cogenerators at some future date, the utility could, at its sole discretion, terminate the contract, renegotiate the contract, or continue payment of the lower allowed payments with no other changes in the terms of the contract.
After an evidentiary hearing, the Commission approved FPL's standard offer contract. However, the Commission determined that regulatory out provisions should not be included in standard offer contracts and struck the regulatory out clause from FPL's contract. The Commission's order states:
6. REGULATORY OUT CLAUSE
... There is no need for a regulatory out provision in standard offer contracts in the State of Florida.
Our decision here applies only to standard offer contracts for the purchase of firm capacity and energy from small qualifying facilities less than 75 MW or from solid waste facilities as defined in Rule 25-17.091, Florida Administrative Code. A significant difference between standard offer and negotiated contracts is that we require utilities to purchase firm capacity and energy pursuant to standard offer contracts. The utilities are given no choice. Therefore, when we approve the standard offer contract, we make a commitment that we will allow cost recovery of payments made to small QFs. Because we have made such a commitment, there is no need for a regulatory out provision in the standard offer. We have no intention of revisiting our decision to allow cost recovery. Therefore, the regulatory out provision has become unnecessary surplusage. Such provisions create a mistaken perception that revenues under a standard offer are not reliable. This is not the case.
Order No. 24989 (Aug. 29, 1991) at 70-71. The order further states that Commission approval of a standard offer contract constitutes a determination by the Commission that any payments made to a QF under the standard offer contract constitute reasonable and prudent expenditures by the utility under section 366.06, Florida Statutes (1991). According to the order, once the Commission's determination becomes final by operation of law, the Commission cannot deny a utility cost recovery of payments made to the QF pursuant to the standard offer contract, "absent some extraordinary circumstance relating to the finding of prudence, such as where our finding of prudence was induced through perjury, fraud or the intentional withholding of key information." Id. at 71. Thus, the Commission concluded that utilities and QFs should be able to rely on the finality of the approval of cost recovery under standard offer contracts without fear of modification.[4]
In this appeal, FPL argues that the Commission's decision to eliminate the regulatory out clause was based on a misinterpretation of the doctrine of "administrative finality" and the faulty legal conclusion that the finality of the Commission's decision rendered regulatory out clauses unnecessary. The rule of administrative finality provides that
orders of administrative agencies must eventually pass out of the agency's control and become final and no longer subject to modification. This rule assures that there will be a terminal point in every proceeding at which the parties and the public may rely on a decision of such an agency as being final and dispositive of the rights and issues involved therein.
Peoples Gas Sys., Inc. v. Mason, 187 So.2d 335, 339 (Fla. 1966). However, this Court has recognized exceptions to the doctrine of administrative finality based on a significant change of circumstances or a demonstrated public interest. Reedy Creek Utils. Co. v. Florida Pub. Serv. Comm'n, 418 So.2d 249 (Fla. 1982); Austin Tupler Trucking, Inc. v. Hawkins, 377 So.2d 679 (Fla. 1979); Peoples Gas Sys., Inc.
FPL asserts that circumstances could arise under which the Commission, acting in the public interest or pursuant to legislative *663 mandate, would preclude the recovery of payments made to a QF. If this were to occur, the utility would have no recourse if its contract with the QF did not contain a regulatory out clause. Thus, FPL concludes that the Commission erred by eliminating the regulatory out provision from the standard offer contract as "unnecessary surplusage" based on the faulty assumption that its decision regarding cost recovery is final and unalterable and there is no risk of future regulatory disallowance.
The Commission responds that it has the authority to make its determination of prudence nonreversible over the life of the standard offer contract. The Commission points out that the cases relied upon by FPL only relate to the continuing viability of the Commission's orders in instances where it finds reason to change an order after it becomes final. The Commission asserts that it does not seek to establish the continuing validity of its approval of the recovery of QF payments by its inability to act, but rather that it has the authority to provide one-time, nonreversible approval of the prudence of payments made under a standard offer contract.[5]
The Commission is vested with the authority to review standard offer contracts to ensure that they are fair to the parties to the contract and that they further the energy policies of the state as defined by the Legislature. § 366.051, Fla. Stat. (1991). There is evidence in the record that regulatory out clauses make the financing of cogeneration projects difficult or more expensive because they create the perceived risk that revenues payable under the contract are subject to disallowance through no fault of the QF. As noted in the Commission's order, regulatory out clauses "create a mistaken perception that revenues under a standard offer contract are not reliable." Thus, the Commission's decision to eliminate regulatory out clauses from standard offer contracts furthers Florida's policy of encouraging the cogeneration of electric power. At the same time, the Commission purported to guarantee that the utility could recover its QF payments absent extraordinary circumstances. Obviously, the risk of extraordinary circumstances has to fall on one or the other of the contracting parties. With respect to small QFs, the Commission chooses to place that risk on FPL. We believe that the Commission acted within its authority under sections 366.06, 366.051 and 366.81.[6]
We do not find the Commission's order inconsistent with the doctrine of administrative finality and its exceptions. By stating that it does not intend to revisit the decision to allow cost recovery, the Commission has endeavored to make its order as final as the law permits. The law guarantees FPL a reasonable rate of return upon its investment, and absent the extraordinary circumstances outlined in the Commission's order, FPL can have no reasonable apprehension that it will be unable to recover the payments it is required to make under the QF contract.
Accordingly, we hold that the Commission's decision to remove regulatory out clauses from standard offer contracts with small QFs is supported by substantial competent evidence and consistent with the doctrine of administrative finality. We affirm Order Numbers 24989 and 25569 of the Public Service Commission.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, KOGAN and HARDING, JJ., concur.
NOTES
[1] The Code adopts the Federal Energy Regulatory Commission Rules 292.101 through 292.207, effective March 20, 1980, regarding definitions and criteria that a small power producer or cogenerator must meet to achieve the status of a QF. Fla. Admin. Code R. 25-17.080(1). "Small power producers and cogenerators which fail to meet the FERC criteria for achieving qualifying facility status but otherwise meet the objectives of economically reducing Florida's dependence on oil and the economic deferral of utility power plant expenditures may petition the Commission to be granted qualifying facility status for the purpose of receiving energy and capacity payments pursuant to [the rules]." Id.
[2] Small QFs are QFs less than 75 megawatts. Fla. Admin. Code R. 25-17.0832(3)(a).
[3] Utilities may negotiate contracts for the purchase of firm energy and capacity from QFs of 75 megawatts or greater. See Fla. Admin. Code R. 25-17.0832(2).
[4] The Commission reiterated its conclusion in its order denying Florida Power and Light's "Motion for Reconsideration and Clarification" of Order Number 24989. Order No. 25569 (Jan. 1, 1992).
[5] The Commission also contends that Florida Power and Light does not have standing to pursue this appeal. We find this argument to be without merit. See § 120.68, Fla. Stat. (1991).
[6] The fact that the Commission chose not to require the elimination of regulatory out clauses in contracts with large QFs does not undercut the Commission's position. The Commission had the discretion to conclude that the existence of regulatory out clauses was less harmful to large QFs.