701 So.2d 322 (1997)
PANDA-KATHLEEN, L.P./PANDA ENERGY CORPORATION, Appellant,
v.
Susan F. CLARK, et al., as the Florida Public Service Commission, and Florida Power Corporation, Appellees.
No. 88280.
Supreme Court of Florida.
September 18, 1997.
Rehearing Denied November 13, 1997.
*323 Arthur J. England, Jr., David L. Ross, and Joe N. Unger of Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, for Appellant.
Robert D. Vandiver, General Counsel, and Richard C. Bellak, Associate General Counsel, Florida Public Service Commission, Tallahassee; James A. McGee and Jeffrey A. Froeschle, Office of the General Counsel, Florida Power Corporation, St. Petersburg; and Alan C. Sundberg and Sylvia H. Walbolt of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg, for Appellees.
WELLS, Justice.
Panda-Kathleen, L.P./Panda Energy Company (Panda) appeals Order No. PSC-96-0671-FOF-E1 of the Florida Public Service Commission (the Commission) regarding Panda's standard-offer contract with Florida Power Corporation (FPC) to provide electricity through the process of cogeneration. We have jurisdiction. Art. V, § 3(b)(2), Fla. Const. For the reasons expressed, we find that the Commission had jurisdiction and affirm the Commission's order, holding that the Commission's jurisdiction is proper and that Order No. PSC 96-0671-FOF-EI is affirmed.
This action was commenced at the Commission on January 25, 1995, when FPC filed a petition for declaratory statement regarding certain aspects of its standard-offer cogeneration contract with Panda. On November 25, 1991, Panda and FPC entered into the standard-offer contract at issue, which required Panda to provide and FPC to purchase 74.9 megawatts of cogenerated electricity at all times while the contract was in effect. The contract was entitled "Standard *324 Offer Contract for the Purchase of Firm Capacity and Energy from a Qualifying Facility Less than 75 megawatts or a Solid Waste Facility." The contract incorporated the Commission's rules pertinent to cogeneration contracts, including rule 25-17.0832, Florida Administrative Code. The contract also incorporated appendices. The Commission approved the contract on October 22, 1992. In re Fla. Power Corp., Docket No. 91142-EQ, Order No. PSC 92-1202-FOF-EQ (F.P.S.C. Oct. 22, 1992).
Among the rules that were incorporated were Commission rule 25-17.0832(3)(a), which referred to "the purchase of firm capacity and energy from small qualifying facilities less than 75 megawatts," and Commission rule 25-17.0832(3)(e)6., which stated:
[T]he period of time over which firm capacity and energy shall be delivered from the qualifying facility to the utility [is] ... [a]t a maximum ... equal to the anticipated plant life of the avoided unit, commencing with the anticipated in-service date of the avoided unit[.]
The Commission's rules derive from section 366.051, Florida Statutes (1991), which is consistent with the cogeneration provisions of the Public Utility Regulatory Policies Act of 1978 (PURPA), 16 U.S.C. §§ 824-824m (1994), and which provides that qualifying facilities (QFs) such as Panda can sell energy to utility companies at but not exceeding full avoided cost. "Avoided cost" is the cost that a utility avoids by purchasing electrical power from a QF rather than generating the electrical power itself or purchasing the power from another source. Schedule 2 to appendix C of this contract identified the economic plant life of the unit avoided by this contract as equal to twenty years.
FPC's petition before the Commission alleged that Panda proposed to construct a cogeneration facility of 115 megawatts and that, by reason of having typed within a blank space on the contract a contract expiration date of 2025, Panda was asserting the right to capacity payments for a period of time exceeding by ten years the twenty-year economic plant life of the avoided unit. The petition sought an order declaring (1) that the standard offer contract is not available if Panda configures its facility to have a capacity in excess of seventy-five megawatts, and (2) that if the Commission determines that the contract remains available to Panda, FPC has no obligation under the contract to make any payments to Panda after December 2016, the end of the twenty-year life of the avoided unit.
On February 6, 1995, Panda sought to intervene in the declaratory statement proceeding before the Commission. The Commission granted intervention on March 6, 1995. On March 14, 1995, Panda filed a motion for declaratory statement seeking an order declaring Panda's proposed 115-megawatt facility to be consistent with rule 25-17.0832(3)(a) and declaring that the contract the Commission had previously approved provided for a thirty-year time period of payments. On June 29, 1995, Panda filed a petition for a formal evidentiary proceeding and full commission hearing. In their respective pleadings, FPC and Panda each acknowledged the Commission's jurisdiction to adjudicate those issues related to the contract, with Panda specifically asserting in its petition for evidentiary and full commission hearings that "the Commission has the right, and in these circumstances the obligation, to convene and conduct a formal evidentiary proceeding pursuant to section 120.57(1), Florida Statutes."
However, on September 12, 1995, in an apparent change of position, Panda filed a motion to dismiss and motion to stay or abate proceedings. Panda asserted that PURPA preempted the Commission's jurisdiction as to issues involving a standard-offer contract arising after the Commission's initial approval of the contract and that such issues must be decided by a court of competent jurisdiction. By order dated December 27, 1995, the Commission denied Panda's motions. The Commission stated in its order:
The relief FPC has requested here does not conflict with federal regulations or subject Panda to "utility-type" state rate regulation. It seeks an answer to two questions: 1) Under the provisions of Rule 25-17.0832(3)(a), Florida Administrative Code, as applied to the standard offer at issue, is Panda permitted to build a cogeneration *325 facility larger than 75 MW; 2) Under the provisions of Rule 25-17.0832(3)(e)(6), Florida Administrative Code, as applied to the standard offer at issue, is Florida Power obligated to make firm capacity and energy payments to Panda for more than 20 years. Certainly we have the authority to answer those questions.
In re Panda-Kathleen, L.P., Docket No. 950110-EI, Order No. PSC 95-1590-FOF-EI (F.P.S.C. Dec. 27, 1995).
An evidentiary hearing was held in February 1996. The Commission issued an order on May 20, 1996, in which it determined: (1) that Panda's proposed 115-megawatt facility does not comply with rule 25-17.0832, Florida Administrative Code; (2) that FPC is only responsible for firm capacity payments to Panda and eligible for cost recovery of those payments for twenty years in compliance with rule 25-17.0832; (3) that Panda will only be responsible for supplying firm capacity for twenty years; (4) that the contractual milestone dates are extended by a period of time equal to the time necessary for deciding matters in this docket, which was determined to be a period of eighteen months; and (5) that Panda should receive a twenty-year capacity payment stream, using the payment stream in appendix C, schedule 3, for the standard-offer contract to set a net present value of approximately $71 million in 1996, with FPC being directed to file a new capacity payment stream for administrative approval within thirty days of issuance of the Commission order. Order No. PSC-96-0671-FOF-EI.
Panda raises three issues in this appeal. First, Panda asserts that, under PURPA, federal preemption precludes the Commission's jurisdiction to determine that the contract between Panda and FPC is invalid and that any issue of contract interpretation must be left to the courts. Panda maintains that because the Commission approved the contract exactly as written, FPC cannot ask the Commission to rewrite or interpret the contract or to revoke approval of the contract. Second, Panda contends that even if the Commission has jurisdiction to hear the petitions, the Commission must conclude that the contract permitted Panda to build the facility as proposed and to receive capacity payments for thirty years, the stated duration of the contract. Third, Panda argues that FPC waived its rights and was estopped from arguing its position and prevailing because of FPC's conduct from 1991 through 1994 in proposing, entering into, and beginning performance of the contract which permitted a facility of the size that Panda proposed and which required payment for a period of thirty years. Panda does not claim that the Commission erred in respect to extending the milestone dates.
In response, the Commission and FPC contend that PURPA, by its express language, does not preempt the rules which they contend control this controversy. The appellees point to the language of PURPA found in 16 U.S.C. § 824a-3(e)(3)(A),[1] and also argue that the United States Supreme Court upheld a similar application of PURPA in Federal Energy Regulatory Commission v. Mississippi, 456 U.S. 742, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982), and, therefore, the Commission has jurisdiction. As to the second issue, the appellees argue that the Commission has the power under PURPA and decisions of this Court to enforce its own rules regarding contract duration which were part of and which governed the standard-offer contract. As to Panda's third issue, the Commission contends that the waiver and estoppel argument is fundamentally irrelevant because the operation of the standard offer contract must comply with the Commission's rules incorporated in it, any contrary understandings of the parties notwithstanding.
We affirm the Commission's order. As we did in Pan American World Airways, Inc. v. Florida Public Service Commission., 427 So.2d 716 (Fla.1983), we begin by noting that we presume orders of the Commission to be correct, and we only determine whether *326 the Commission's action comports with the essential requirements of law and is supported by competent, substantial evidence. Id. at 717.
As to the Commission's jurisdiction to resolve this dispute concerning provisions of a standard-offer contract, we conclude that PURPA contemplates and authorizes the Commission's exercise of jurisdiction to resolve controversies such as this one. In reaching this conclusion, we rely upon the United States Supreme Court's interpretation of state regulatory jurisdiction under PURPA in Federal Energy Regulatory Commission v. Mississippi, which states:
Section 210 of PURPA's Title II, 92 Stat. 3144, 16 U.S.C. § 824a-3, seeks to encourage the development of cogeneration and small power production facilities. Congress believed that increased use of these sources of energy would reduce the demand for traditional fossil fuels. But it also felt that two problems impeded the development of nontraditional generating facilities: (1) traditional electricity utilities were reluctant to purchase power from, and to sell power to, the nontraditional facilities, and (2) the regulation of these alternative energy sources by state and federal utility authorities imposed financial burdens upon the nontraditional facilities and thus discouraged their development.
In order to overcome the first of these perceived problems, § 210(a) directs FERC, in consultation with state regulatory authorities, to promulgate "such rules as it determines necessary to encourage cogeneration and small power production," including rules requiring utilities to offer to sell electricity to, and purchase electricity from, qualifying cogeneration and small power production facilities. Section 210(f), 16 U.S.C. § 824a-3(f), requires each state regulatory authority and nonregulated utility to implement FERC's rules. And § 210(h), 16 U.S.C. § 824a-3(h), authorizes FERC to enforce this requirement in federal court against any state authority or nonregulated utility; if FERC fails to act after request, any qualifying utility may bring suit.
To solve the second problem perceived by Congress, § 210(e), 16 U.S.C. § 824a-3(e), directs FERC to prescribe rules exempting the favored cogeneration and small power facilities from certain state and federal laws governing electricity utilities.
Pursuant to this statutory authorization, FERC has adopted regulations relating to purchases and sales of electricity to and from cogeneration and small power facilities. These afford state regulatory authorities and nonregulated utilities latitude in determining the manner in which the regulations are to be implemented. Thus, a state commission may comply with the statutory requirements by issuing regulations, by resolving disputes on a case-by-case basis, or by taking any other action reasonably designed to give effect to FERC's rules.

456 U.S. at 750-51, 102 S.Ct. at 2132-33 (footnotes omitted) (citations omitted) (emphasis added).
In Florida, PURPA is implemented by consistent state policy authorized by section 366.051, Florida Statutes (1991). In Florida Power & Light Co. v. Beard, 626 So.2d 660 (Fla.1993), we recognized that section 366.051 vested the Commission with authority to review standard offer contracts "to ensure that they are fair to the parties to the contract and that they further the energy policies of the State as defined by the Legislature." Id. at 663. One of the energy policies defined by the legislature is the encouragement of cogeneration and small power production by directing that utilities "shall purchase, in accordance with applicable law, all electricity offered for sale by such cogenerator." § 366.051, Fla. Stat. (1991). The legislature further provided that "[t]he commission shall establish guidelines relating to the purchase of power or energy by public utilities from cogenerators or small power producers." § 366.051, Fla. Stat. (1991).
In accord with this legislative directive, the Commission adopted relevant portions of FERC's PURPA rules, and it further promulgated rules 25-17.080 through 25-17.091, Florida Administrative Code. These rules are incorporated in this standard-offer *327 contract. Specifically, rule 25-17.0832(3)(a) requires participating QFs to have less than 75-megawatt capacity and establishes that the period of time for delivery be equal to the anticipated plant life of the avoided unit. We believe it would be contrary to both federal and state statutory authority directing the cogeneration program to deny the Commission the power to construe the regulations it has adopted in furtherance of that program and to resolve conflicts concerning implementation of those regulations. Our conclusion naturally flows from the United States Supreme Court's additional statement in Federal Energy Regulatory Commission v. Mississippi:
In essence, then, the statute and the implementing regulations simply require [state] authorities to adjudicate disputes arising under the statute. Dispute resolution of this kind is the very type of activity customarily engaged in by the Mississippi Public Service Commission.
Id. at 760, 102 S.Ct. at 2137.
This is likewise the type of activity in which the Florida Public Service Commission is engaged. Furthermore, we agree with the Commission that to forbid the Commission to resolve disputes concerning its rules pertaining to cogeneration would render the Commission powerless to limit standard-offer contracts to small QFs with capacity of less than seventy-five megawatts or to fulfill its obligation under both federal and state statutes to limit capacity payments to avoided costs. Both of the federal and state legislative enactments as well as the judicial decisions applying the statutes clearly contemplate that the Commission shall bear the responsibility of resolving such disputes.
We find Freehold Cogeneration Associates, L.P. v. Board of Regulatory Commissioners, 44 F.3d 1178 (3d Cir.1995), the case upon which Panda primarily relies in arguing against Commission jurisdiction, to be factually distinguishable. In Freehold, the board was not construing and implementing its own regulations. Rather, that case involved utility-type regulation in the form of efforts of the New Jersey regulatory commission to induce a cogenerator to renegotiate a reduction in the amount of capacity payments to save money for ratepayers. Id. at 1183. The Court held that Freehold's pleading sufficiently alleged utility-type rate regulatory action by the state regulatory commission in conflict with PURPA's exemption of QFs from state law regulating rates of electric utilities. Id. at 1190. The court concluded that once the commission approved the power purchase agreement on the ground that the rates were consistent with avoided costs, any action or order by the commission to reconsider its approval or to deny the passage of those rates to the utilities consumers was preempted by federal law. Id. at 1194. We recognize, as did the court in Freehold, that utility-type rate regulation is clearly preempted. However, the Florida Commission, in its order ruling upon Panda's standard-offer contract, did not engage in utility-type rate regulation. This case involves the construction of conflicting provisions that were included in the contract from the its inception, not a modification in the terms of the contract so as to adjust rates paid by consumers.
Moving to Panda's second issue, we find that the regulations and the contract specify a contract for a facility with a capacity less than seventy-five megawatts. The Commission has interpreted the 75-megawatt threshold as applying to the "total net capacity" of a QF rather than the "committed capacity" sold by a QF pursuant to a standard offer contract. In re Petition of Polk Power Partners, L.P. Ltd., Docket No. 920556-EQ, Order No. PSC 92-0683-DS-EQ (F.P.S.C. July 21, 1992).[2] We give great deference to the Commission's interpretation of its own rules and will not disturb that interpretation unless the interpretation is shown to be clearly erroneous. Pan American World Airways, Inc., 427 So.2d at 719. Applying the Commission's construction of its rule, we conclude that there is competent, substantial evidence to support the Commission's finding that Panda does not need a *328 115-megawatt facility to serve its standard offer contract and that, therefore, Panda's proposed QF does not comply with rule 25-17.0832, Florida Administrative Code, which is incorporated into the contract.
We next consider the Commission's order that the duration of capacity payments to Panda be limited to twenty years. This issue brings into focus the issue of which provision of a standard-offer contract controls when a typed-in provision directly conflicts with the Commission's rules and the appendices which are incorporated into the contract. In this case, Panda typed in a termination date of March 2025, thirty years from the early in-service date that Panda originally requested. As earlier noted, rule 25-17.0832(3)(e)6., Florida Administrative Code, establishes that, under the contract, electrical power equal to firm capacity of the QF shall be delivered for a period of time equal to the anticipated plant life of the utility's avoided power-production unit. Appendix C, schedule 2, shows that the economic plant life of FPC's avoided unit is twenty years. The problem presented here is that the Commission approved the contract with the apparently conflicting provisions of thirty-year and twenty-year terms. The Commission resolved this conflict by determining that its rule controlled. The Commission rejected an interpretation of the contract offered by FPC's expert that the contract term is thirty years, but since the economic life of the avoided unit is only twenty years, the contract only requires FPC to purchase as-available energy starting in year twenty-one. Rather, the Commission determined that it was required by PURPA and its own rules to ensure that utilities pay no more than the cost avoided by purchasing power from the QF and that the Commission would resolve the ambiguity created by the conflict between the typed-in provision, the rule, and the appendices, by giving effect to the rule. Thus, the Commission held that FPC is only required to make capacity payments for twenty years in accordance with the rule and that Panda is only responsible for supplying firm capacity for twenty years.
We find that the Commission's decision did not deviate from the essential requirements of law and that the decision conformed to the intent of PURPA and the Commission's rules. Moreover, we conclude that if the Commission had not resolved the conflict created by the Commission's approval of a contract term conflicting with the Commission's rule as to avoided cost, then the contract would have violated PURPA and section 366.051, Florida Statutes (1991). In sum, the Commission had the power to and did correct its own mistake regarding contract duration.[3]
Finally, as to Panda's third issue contending that FPC's conduct from 1991 through 1994 created an estoppel, we agree with the Commission that FPC's conduct and any understandings of the parties contrary to the Commission's rules are irrelevant to the Commission's enforcement of its rules. Our determination rests on whether the Commission's construction of its rules departed from the essential requirements of law and whether its decision was based on competent, substantial evidence. We will not reweigh or reevaluate the evidence presented to the Commission. McCaw Communications of Florida, Inc. v. Clark, 679 So.2d 1177, 1178 (Fla.1996).
For the reasons stated, we affirm the order of the Commission.
It is so ordered.
KOGAN, C.J., and OVERTON, GRIMES, HARDING and ANSTEAD, JJ., concur.
SHAW, J., dissents.
NOTES
[1] 16 U.S.C. § 824a-3(e)(3)(A) (1994), provides:

(e) Exemptions
....
(3) No qualifying small power production facility or qualifying cogeneration facility may be exempted under this subsection from
(A) any State law or regulation in effect in a State pursuant to section (f) of this section....
[2] Panda argues that the Commission should not apply its Polk Power definition retroactively. However, the Commission points out that its Polk Power order is dated July 21, 1992, and the Panda standard-offer contract is dated October 22, 1992.
[3] Construction of the Panda QF had not begun when the Commission's correcting order of May 20, 1996, was entered.