780 So.2d 34 (2001)
FLORIDA POWER CORPORATION, Appellant,
v.
Joe GARCIA, etc., et al., Appellees.
No. SC94665.
Supreme Court of Florida.
March 1, 2001.
*35 Rodney Gaddy and James A. McGee, Florida Power Corporation, St. Petersburg, FL; Jodi L. Corrigan and Marylin E. Culp of Annis, Mitchell, Cockey, Edwards & Roehn, P.A., Tampa, FL; and Sylvia H. Walbolt, Chris S. Coutroulis, Robert L. Ciotti, and Joseph H. Lang, Jr. of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., for Appellant.
Robert D. Vandiver, General Counsel, and Richard C. Bellak, Associate General Counsel, Florida Public Service Commission, Tallahassee, FL, for Appellee.
John Beranek and Lee L. Willis of Ausley & McMullen, Tallahassee, FL, for Lake Cogen, Ltd., Intervenor/Appellee.
Robert Scheffel Wright and John T. Lavia, III, Tallahassee, Florida; and Gail P. Fels, Office of the County Attorney, Miami, FL, for Miami-Dade County, Florida, and Montenay-Dade, Ltd., Intervenors/Appellees.
LEWIS, J.
This case involves an appeal from a decision of the Public Service Commission (the "Commission," or the "PSC") denying Florida Power Corporation's petition for declaratory statement on the basis of res judicata. In re Petition of Florida Power Corp., 98 F.P.S.C. 12:65 (1998) (Docket No. 980509-EQ, Order No. PSC-98-1621-FOF-EQ, Dec. 4, 1998). We have jurisdiction. See art. V, § 3(b)(2), Fla. Const. The narrow question presented is whether the 1995 determination by the Florida Public Service Commission regarding its jurisdiction to entertain a certain petition for declaratory statement filed in 1994 by appellant, Florida Power Corporation (FPC), had a preclusive effect as applied to its later determination of jurisdiction to entertain a substantially similar petition for declaratory statement filed by FPC in 1998. Based upon the unique circumstances of this case, we affirm the PSC's determination that it did because the concept of administrative finality applies.

I. MATERIAL FACTS AND PROCEEDINGS BELOW
In March, 1991, FPC and certain qualifying facilities[1] ("QF"s) entered into negotiated contracts for the purchase of electrical power. One of these contracts involved the cogenerator who is the appellee here, Lake Cogen, Limited ("Lake Cogen"). All of the contracts contain the following provision, set forth as section 9.1.2:
Except as otherwise provided in Section 9.1.1 hereof, for each billing month beginning with the Contract In-Service Date, the QF will receive electric energy payments based on the Firm Energy Cost calculated on an hour-by-hour basis as follows: (i) the product of the average monthly inventory chargeout price of fuel burned at the Avoided Unit Fuel *36 Reference Plant, the Fuel Multiplier, and the Avoided Unit Heat' Rate, plus the Avoided Unit Variable Q & M, if applicable, for each hour that the Company would have had a unit with these characteristics operating; and (ii) during all other hours, the energy cost shall be equal to the As Available Energy Cost.
This provision makes apparent allowance for the fact that electric utilities such as FPC typically have a number of electricity-generating facilities, not all of which may be "on line" at the same time, but which may be cycled into operation as appropriate to meet the customers' fluctuating energy demands. See generally Leonard S. Hyman, America's Electric Utilities: Past, Present and Future 22-30 (4th ed.1992). Thus, the contract provision establishes the method to determine, on a monthly basis, when the cogenerator will be entitled to receive higher "firm" energy payments for electricity pursuant to subsection (i) (when FPC would have operated the "avoided unit"the facility which a utility such as FPC, by purchasing electrical power from a QF, avoids having to build to meet customer demand for electricity) or lower "as-available" payments pursuant to subsection (ii) (when such unit would not have been operated).
On July 1, 1991, in In re Petition for Approval of Contracts, 91 F.P.S.C. 7:60 (1991) (Docket No. 910401-EQ, Order No. 24734, July 1, 1991), the PSC reviewed the negotiated contracts and found them to be cost-effective for FPC's ratepayers (that is, not requiring payment to the cogenerators in excess of FPC's "avoided cost") under the criteria established in Rules 25-17.082 and 25-17.0832(2), Florida Administrative Code (providing that "[n]egotiated contracts will be considered prudent for cost recovery purposes if it is demonstrated by the utility that the purchase of firm capacity and energy from the qualifying facility pursuant to the rates, terms, and other conditions of the contract can reasonably be expected to contribute towards the deferral or avoidance of additional capacity construction or other capacity-related costs by the purchasing utility at a cost to the utility's ratepayers which does not exceed full avoided costs, giving consideration to the characteristics of the capacity and energy to be delivered by the qualifying facility under the contract"). As stated by this Court in Panda-Kathleen, L.P. v. Clark, 701 So.2d 322, 324 (Fla.1997), "`[a]voided cost' is the cost that a utility avoids by purchasing electrical power from a QF rather than generating the electrical power itself or purchasing the power from another source." In arriving at the estimated energy payment structure which the Commission approved, the contract used simplified assumptions regarding the "avoided unit."
During the first three years of the contract, FPC paid cogenerators firm energy prices at all hours of the day (thus, at the very least, implying that FPC would have operated the "avoided unit" at all times). However, thereafter (according to representations made to the Commission by FPC), FPC reviewed the operational status of the "avoided unit" described in section 9.1.2 of the contracts during minimum load conditions (that is, times of minimum customer demand for energy), and determined that the "avoided unit" would be scheduled off during certain minimum load hours of the day.
Based upon this review, on July 18, 1994, FPC unilaterally notified the parties to the contracts that, effective August 1, 1994, FPC would begin implementing section 9.1.2 as a basis for making certain "as available" energy payments for electricity (i.e., assuming that the "avoided unit" would not be operating during those hours) instead of the "firm" energy payments which it had previously been making (i.e., assuming, at least by implication, that the "avoided unit" would be operating during those hours). Three days later, on July 21, 1994, in an apparent attempt to justify its planned change in payments, FPC filed a petition with the Commission seeking a declaratory statement that section *37 9.1.2 of its negotiated cogeneration contracts (including the contract with appellee here) was consistent with Rule 25-17.0832(4)(b), Florida Administrative Code.[2]
The appellee cogenerator, Lake Cogen, petitioned for leave to intervene and questioned whether the declaratory statement procedure was appropriate. In addition, Lake Cogen filed a motion to dismiss on the ground that the PSC did not have jurisdiction to consider FPC's petition. Lake Cogen also initiated a lawsuit in state court at this time, alleging breach of contract based upon FPC's planned change in payments, and seeking declaratory judgment.
On November 1, 1994, FPC amended its petition, asking the PSC to determine whether its manner of implementing the pricing mechanism set forth in section 9.1.2 of the negotiated contracts for the purchase of firm capacity and energy from certain QFs (to determine the period when as-available energy payments were to be substituted for firm energy payments), which would result in a planned change in payments, was lawful under section 366.051, Florida Statutes (1993), and complied with Rule 25-17.0832(4)(b), Florida Administrative Code, and the orders of the Commission approving the negotiated contracts. Thereafter, Lake Cogen filed an additional motion to dismiss the amended petition.
In In re Petition by Florida Power Corp., 95 F.P.S.C. 2:263 (1995) (Docket no. 940771-EQ, Order No. PSC-95-0210-FOF-EQ, Feb. 15, 1995), the Commission granted the motion to dismiss. In so ruling, the Commission found that, although FPC had phrased its petition in terms of seeking a rule interpretation, it was really asking the Commission to adjudicate a contractual dispute,[3] a matter over which the Commission did not have jurisdiction. The order provided, in pertinent part:
FPC has asked us to determine if its implementation of the pricing provision is lawful and consistent with Commission Rule 25-17.0832(4), Florida Administrative Code. We believe that FPC's request is really a request to interpret the meaning of the contract term. FPC is not asking us to interpret the rule. It is asking us to decide that its interpretation of the contract's pricing provision is correct. We believe that endeavor would be inconsistent with the intent of PURPA to limit our involvement in negotiated contracts once they have been established. Furthermore, we agree with the cogenerators that the pricing methodology outlined in Rule 25-17.0832(4), Florida Administrative Code, is intended to apply to standard offer contracts, not negotiated contracts. We have clearly said that we would not require any standard provisions, pricing or otherwise, for negotiated contracts. Therefore, whether FPC's implementation of the pricing provision is consistent *38 with the rule is really irrelevant to the parties' dispute over the meaning of the negotiated provision. In this case, we will defer to the courts to resolve that dispute. We note however, that courts have the discretion to refer matters to us for consideration to maintain uniformity and to bring the Commission's specialized expertise to bear upon the issues at hand.

We disagree with FPC's proposition that when the Commission issues an order approving negotiated cogeneration contracts for cost recovery, the contracts themselves become an order of the Commission that we have continuing jurisdiction to interpret....
Under certain circumstances we will exercise continuing regulatory supervision over power purchases made pursuant to negotiated contracts. We have made it clear that we will not revisit our cost recovery determinations absent a showing of fraud, misrepresentation or mistake; but if it is determined that any of those facts existed when we approved a contract for cost recovery, we will review our initial decision. That power has been clearly recognized by the parties through the "regulatory out" provisions of those contracts. We do not think, however, that the regulatory out provisions of negotiated contracts somehow confer continuing responsibility or authority to resolve contract interpretation disputes. Our authority derives from the statutes. United Telephone Company v. Public Service Commission, 496 So.2d 116 (Fla.1986). It cannot be conferred or inferred from the provisions of a contract.
For these reasons we find that the motions to dismiss should be granted. FPC's petition fails to set forth any claim that the Commission should resolve. We defer to the courts to answer the question of contract interpretation raised in this case. Thus, FPC's petition is dismissed.
In re Petition by Florida Power Corp., 95 F.P.S.C. at 2:269-70 (footnote omitted) (emphasis supplied).
With the PSC having refused to intervene in the dispute, the parties involved in the Lake Cogen litigation pending in state court then proceeded to enter into a proposed settlement agreement attempting to resolve all issues between them. Because this agreement included modifications to the power purchase contract, it required Commission approval pursuant to Rule 25-17.082, Florida Administrative Code. Accordingly, FPC filed with the Commission a "Petition for Approval of a Settlement Agreement." Upon considering the petition, the Commission, in a proposed agency action order, determined that the PSC had jurisdiction (in the context of reviewing the modifications to the original contract proposed in the settlement agreement before it) to construe the meaning of the contract as originally approved,[4] citing In re Orange & Rockland Utilities, Inc., No. 96-E-0728, 1996 WL 707459 (N.Y.P.S.C. Nov.29, 1996). It further found that the exercise of such jurisdiction was not barred by the doctrine of administrative finality. Based upon its review of the petition, the PSC concluded that the proposed modifications, when compared with the original contract which the Commission had approved, would result in payments to the cogenerators in excess of current avoided energy costs:
If as FPC contends, the contract contemplates that the "avoided unit" would *39 cycle in FPC's system economic dispatch and if as we believe and FPC contends, the contract provides for the use of actual fuel prices and not projected fuel prices, then Lake's assertion in the circuit that it is entitled to firm energy payments 100% of the time is suspect. If this assertion is suspect, then the "savings" associated with the buy out are overstated. If the Commission does in fact have the jurisdiction to resolve the question of what was contemplated at the time of approval, the uncertainty of the outcome of the circuit court litigation would not be a factor in the decision to approve the buy out.
. . . .
... Florida Power Corporation argues that, given the Commission's previous determination that it would defer to the circuit court, the Commission cannot revisit that question in the guise of a cost recovery approval/disallowance.
However, we are not, at this juncture, "revisiting" anything. What is before the Commission is a contract modification that we believe is based on an erroneous assumption. That is, that the cost effectiveness of the modification is based on the "litigation risk" associated with a circuit court determination of the operating characteristics of the "avoided unit" in a manner not contemplated or intended when the contract was approved. If, as FPC suggests (and Crossroads [Orange & Rockland Utilities] supports), this Commission has the jurisdiction to interpret and clarify its approval, there is no "risk" associated with an erroneous circuit court interpretation. The modification/buy-out then is clearly not cost-effective when measured by the standard of Rule 25-17.0836, Florida Administrative Code.
. . . .
When the Commission initially approves a negotiated contract, the determination of avoided costs is based on the utility's next identified capacity addition. At that point in time, the contract is evaluated for cost recovery purposes in accordance with the above referenced rules. However, in evaluating contract modifications, continued cost recovery is based on savings compared to the existing contract.

Rule 25-17.036(6) requires that:
The modifications and concessions of the utility and developer shall be evaluated against both the existing contract and the current value of the purchasing utility's avoided cost. (Emphasis added)
Absent a modification, the utility's ratepayers remain obligated to pay costs as specified within the current contract. Therefore, modifications which result in costs above the existing contract are not appropriate for approval.
. . . .
The Settlement Agreement achieves benefits in the form of curtailment savings and reduced capacity and variable O & M payments. However, compared to the more appropriate method of determining energy payments under the existing contract, the Settlement Agreement increases costs to FPC's ratepayers by approximately $17.1 million NPV. Furthermore, contrary to Section 366.051, Florida Statutes, Section 210 of PURPA, and this Commission's rules, approval of the Settlement Agreement commits FPC's ratepayers to costs in excess of current avoided energy costs. For these reasons, we find that the Settlement Agreement should be denied.
In re Petition for Expedited Approval, 97 F.P.S.C. at 11:209-12 (emphasis added).[5]
*40 On April 10, 1998, FPC filed with the PSC the petition for declaratory statement which is at issue here. Pursuant to "Rule 25-22.020, et. seq., F.A.C.," FPC petitioned the Commission as follows:
FOR A DECLARATORY STATEMENT that, under Order no. PSC-97-1437-FOF-EQ entered in Dkt. 961477-EQ, Nov. 14, 1997 (the "Lake Docket"), [PURPA], Fla. Stat. § 366.051, and Rule 25-17.0832, F.A.C., the Commission interprets its Order No. 24734 entered in Dkt. 910401-EQ, July 1, 1991 [originally approving the negotiated contracts between FPC and respondents] to require that FPC:
(A) Pay for energy based upon avoided energy costs, strictly as reflected in the Contract;
(B) Use only the avoided unit's contractually-specified characteristics in § 9.1.2, and not other or additional unspecified characteristics that might have been applicable had the avoided unit actually been built, to assess its operational status for the purpose of determining when [respondents are] entitled to receive firm or as-available energy payments;
(C) Use the actual chargeout price of coal to FPC's Crystal River ("CR") plants 1 and 2, resulting from FPC's prevailing mix of transportation, rather than the mix of transportation in effect at the time the Contract was executed or some other mix, to compute the level of firm energy payments to Dade.
The Commission denied this petition on the basis of administrative res judicata:
Subsequent to the filing of FPC's petition in Docket No. 940771-EQ, Lake and other QFs, filed lawsuits in the state courts for breach of contract. On January 23, 1996, the Fifth Judicial Circuit Court issued a Partial Summary Judgement for Lake in Case No. 94-2354-CA-01.
On April 9, 1998, FPC filed a Petition for a Declaratory Statement arguing that Order No. 24734, issued July 1, 1991, in Docket No. 901401-EQ, together with Orders Nos. PSC-97-1437-FOF-EQ and 24989, PURPA, Section 366.051, Florida Statutes, and Rule 25-17.082, F.A.C., establish that its contractual energy payments to Lake, including when firm or as-available payment is due, are limited to the analysis of avoided costs based upon the avoided unit's contractually-specified characteristics.
On April 30, 1998, Lake filed a motion to dismiss FPC's request for a Declaratory Statement, a petition to intervene and a request for Oral Argument on the topics of res judicata, collateral estoppel and administrative finality....
. . . .
In its current petition, FPC asks us to consider certain authorities which postdate Order 0210 in determining whether the Commission can nonetheless exercise jurisdiction to issue the declaratory statement that FPC now petitions for. Those cases include the New York Public Service Commission's opinion in Orange and Rockland Utilities, Inc. (Crossroads), Case 96-E-0728 [, 1996 WL 707459]; the Florida Supreme Court's decision in Panda Kathleen, L.P. v. Clark, et al. (Panda), 701 So.2d 322 (Fla.1997) and our own Order Denying Approval of Proposed Settlement (Lake), Order No. PSC-97-1437-FOF-EQ in Docket No. 961477-EQ.
In Crossroads, which concerned a negotiated power purchase agreement between a utility and a cogenerator, the NYPSC held that it is within our authority to interpret our power purchase contract approvals[6].... The precedents involving *41 interpretation of past policies and approvals, and not the contract noninterference policy that Crossroads cites, control here. [e.s.] Crossroads, p. 5 [, 1996 WL 707459]
While Panda involved a standard offer contract, FPC interprets the Florida Supreme Court's opinion to provide that
the Commission has jurisdiction to clarify its orders and to construe its rules in order to ensure that contracts and payments thereunder do not exceed avoided cost.
Petition, at p. 14.
Finally, FPC points out that, consistent with Crossroads and other like holdings of the NYPSC, our Lake order reasoned that the cited New York cases
involve a question that turns on what was meant when the contract was approved, and not on the determination of disputed facts and the application of those facts to an unambiguous provision.
Petition, p. 13-14.
In the adjudication of the instant petition, however, we find that we are unable to apply these more recent cases as directly to the case at hand as FPC argues we should. First, this case is distinguishable from both Crossroads and Panda in that neither of those cases involved a prior determination which could be claimed to be, in effect res judicata as to the current controversy concerning pricing between FPC and parties (including Lake) to the negotiated cogeneration contracts containing these identical pricing provisions. The cogenerators, during oral argument, asserted that, however we may decide to reflect such holdings as Crossroads or Panda in our future dispositions as to negotiated cogeneration contract issues, this controversy has already been determined in our dismissal of FPC's prior petitions in Order 0210 and may not be re-adjudicated now. We agree with that point and find that the doctrine of administrative finality precludes such readjudication as a matter of fairness to those who prevailed in the litigation of this issue previously. Peoples Gas System v. Mason, 187 So.2d 335 (Fla.1966). Moreover, our Lake order was only proposed agency action (PAA), which then became a legal nullity when the settlement proposal considered therein lapsed. Therefore, it never matured into a final order so as to constitute this Commission's precedent.

In thus denying FPC's petition, we need not reach today the issue of whether such cases as Crossroads, the reasoning in our Lake order or FPC's interpretation of Panda will or will not play a role in our consideration of future cases concerning negotiated cogeneration contracts post-approval. We only decide that, having resolved this pricing controversy previously in Order 0210, the prior resolution must stand, consistent with the principles of administrative finality.
In re: Petition of Florida Power Corp., 98 F.P.S.C. at 12:66-68 (footnote added) (emphasis supplied).
On appeal, FPC argues that the PSC erred in giving preclusive effect to its 1995 dismissal of FPC's prior petitions, by Order 0210, in the present controversy. FPC also argues that the PSC's dismissal of the current petition on the ground that the same matter is pending in state court is not proper.

II. ANALYSIS
Despite the fact that all of the parties present arguments directed to whether (absent the unique procedural history involved in this case) the Commission does or does not have jurisdiction over some aspect of a contractual controversy such as theirs, that issue is not before the Court at *42 this time. What is before the Court is the question of whether the Commission's 1995 determination of its own subject matter jurisdiction over the present controversy is a bar to the Commission's subsequent determination of jurisdiction over the same claim. To resolve that issue, the Court must decide whether the jurisdictional issue posed by the 1998 petitions was either actually raised and determined, or could have been raised and determined, in the 1994-95 proceedings.
In reviewing the PSC's determination of its own subject matter jurisdiction, this Court has applied the standard established in Pan American World Airways, Inc. v. Florida Public Service Commission, 427 So.2d 716 (Fla.1983). See Panda, 701 So.2d at 325 (applying Pan American standard of review to, inter alia, PSC's determination of its jurisdiction to construe terms of standard offer contract). Pursuant to that review standard, the Court presumes "orders of the Commission to be correct, and ... only determine[s] whether the Commission's action comports with the essential requirements of law and is supported by competent, substantial evidence." Id. at 325-26 (citing Pan American, 427 So.2d at 717).
Applying this standard, under the circumstances of this case, the PSC's prior, unappealed ruling regarding its jurisdiction to entertain the controversy addressed in FPC's petitions-even if erroneous[7] operates as a bar to a subsequent determination of that jurisdiction over the same claim. Cf. State Dep't of Transp. v. Bailey, 603 So.2d 1384, 1387 (Fla. 1st DCA 1992) (acknowledging that "even an erroneous determination on the question of subject matter jurisdiction may become res judicata on that issue if the jurisdictional question was actually litigated and decided, or if a party had an opportunity to contest subject matter jurisdiction and failed to do so," although finding it inapplicable under the facts of the case) (citing 11 Charles Alan Wright & Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure, § 2862, (Supp.1992) (reflecting cases in which an erroneous exercise of jurisdiction was not challenged by appeal)); Oglala Sioux Tribe v. Homestake Mining Co., 722 F.2d 1407, 1411-13 (8th Cir.1983) (holding that dismissal of a suit for lack of federal subject-matter jurisdiction precludes relitigation of the same issue of subject-matter jurisdiction in a second federal suit on the same claim). This result is unchanged even if there has been a subsequent change in case law potentially affecting the scope of the Commission's jurisdiction over the controversy-particularly where (as here) such subsequent case law is not directly on point[8] and irrefutably controlling. Cf. Plymouth Citrus Products Co-op. v. Williamson, 71 So.2d 162 (Fla.1954) (involving workers' compensation claim barred by prior determination that claimant had not suffered an accident based upon case law prevailing at the time of the first determination, even though statute of limitations period had not expired, and controlling case law developed in interim would have provided a basis for the claim); Sugarmill Woods Civic Ass'n, Inc. v. Southern States Utilities, 687 So.2d 1346, 1349 (Fla. 1st DCA 1997) (holding that intervening PSC order reflecting that PSC had jurisdiction over certain facilities should not be retroactively applied because "[a] subsequent order by the body which rendered the order under review is not the *43 kind of `change in the law' which the appellate court is bound to apply to pending cases"); Hillhaven Corp. v. Department of Health and Rehab. Servs., 625 So.2d 1299 (Fla. 1st DCA 1993) (holding that a Supreme Court decision which invalidated a statute related to certain rules, and which was rendered after adoption of the rules but before commencement of the proceeding challenging them, applied to invalidate the rules at issue), review denied, 634 So.2d 623 (Fla.1994).
In Plymouth Citrus Products, this Court considered whether res judicata applied to bar a workers' compensation claim where the Deputy Commissioner had previously made a determination (on the merits) based upon the then-prevailing case law, the claimant had not sought appellate review, and, thereafter, the controlling precedent changed, so that the claimant would have been entitled to recover from the employer under the changed case law. The statute of limitations had not expired when the case law changed, and the claimant again filed his claim, in the form of a petition for modification. The full Commission accepted this petition "as the filing of a new claim by the claimant," determining, based upon the current case law, that "the claimant suffered a compensable accident for which claim had been filed within the proper time limit" and that "the previous adjudication between the parties is not res judicata to this present claim." 71 So.2d at 163.
In reversing this order, this Court disagreed with the Commission's analysis:
There must be an end to litigation sometime. As to the facts in this particular case, the doctrine of res adjudicata applies.
The case of Wagner v. Baron, Fla., 64 So.2d 267, was strongly relied upon by petitioner in this case but it is not applicable. In that case we were dealing with a statute which imposed certain additional liabilities upon the father of a bastard child in the nature of support for the said child during a certain period of time and for the determination of the question of fatherhood. There was no question involved in that case of an intervening decision which changed the rule of law or the responsibilities, duties and liabilities of the father of the bastard child. The change in that case was effected by a statute.
After a judgment, order or decree has become final and the time for appeal has expired, an intervening decision which may change the liability or the rule of law applicable to a case is not sufficient ground to open the case up for the filing of a new claim under the same facts.

It appears that the Full Commission did not proceed in accordance with the essential requirements of the law in this matter. The writ of certiorari should be granted and the order of the Full Commission, affirming the Deputy Commissioner, should be quashed and set aside and a proper order entered by the Full Commission, reversing and setting aside the order of the Deputy Commissioner.
Plymouth Citrus Products, 71 So.2d at 163 (emphasis supplied) (citations omitted). Applying these principles to the present case, the Commission's determination of its jurisdiction to entertain the 1998 petition for declaratory statement regarding the parties' negotiated contract was governed by the doctrine of administrative finality.
Further, even if the jurisdictional issue raised by appellant in its 1998 petition was not actually determined by the PSC's prior decision regarding jurisdiction over the 1994 petition, it appears that it could have been resolved by the PSC at that time. In reviewing the two petitions, there is no question that they are substantively the same, despite the semantical difference.[9] *44 That semantical difference is "what the contract terms mean" (1994) (i.e., an interpretation of the contract itself) versus "what the contract terms meant to the PSC when it approved the contract") (1998) (i.e., an interpretation of the Commission's contract approval order). Although the wording of the 1994 and 1998 jurisdictional issues is not identical, because FPC could have challenged the Commission's jurisdictional analysis in an appeal from the denial of its 1994 petition (but did not), the doctrine of decisional finality still applies. Cf. Albrecht v. State, 444 So.2d 8, 11-12 (Fla.1984) (reflecting that, for the counterpart of administrative finalityres judicatato apply, several conditions must occur simultaneously, one of which is an identity of the cause of action, and that the "determining factor in deciding whether the cause of action is the same is whether the facts or evidence necessary to maintain the suit are the same in both actions") (citations omitted); accord, Youngblood v. Taylor, 89 So.2d 503, 505 (Fla.1956) (observing that "the test of the identity of the causes of action, for the purpose of determining the question of res adjudicata, is the identity of the facts essential to the maintenance of the actions") (citing Gordon v. Gordon, 160 Fla. 838, 36 So.2d 774, 777 (1948) (quoting Bagwell v. Bagwell, 153 Fla. 471, 14 So.2d 841, 843 (1943)).
The doctrine of decisional finality provides that there must be a "terminal point in every proceeding both administrative and judicial, at which the parties and the public may rely on a decision as being final and dispositive of the rights and issues involved therein." Austin Tupler Trucking, Inc. v. Hawkins, 377 So.2d 679, 681 (Fla.1979). Here, because there is an identity of essential facts common to FPC's 1994 and 1998 petitions, along with an identity of the substance of the issue presented, the same issue of subject matter jurisdiction implicated by the 1998 petition, even if not actually raised in 1994, could have been raised at that time. A decision, once final, may only be modified if there is a significant change in circumstances or if modification is required in the public interest. See Austin Tupler Trucking, 377 So.2d at 681. Although the Court will avoid "too doctrinaire" an application of the rule, see Peoples Gas System, Inc. v. Mason, 187 So.2d 335, 339 (Fla.1966), the circumstances here do not compel a different result.
Even assuming arguendo (as appellant urges) that a change in law could qualify as "changed circumstances" for purposes of this analysis, the theory does not apply. At the time FPC filed its first petition, there was already an out-of-state ruling reflecting that it was properly within the ambit of a public service commission's authority to interpret the scope of its contract approval. See Indeck-Yerkes Energy Servs. v. Public Serv. Comm'n, 164 A.D.2d 618, 564 N.Y.S.2d 841 (1991). Indeed, this was the opinion cited by the New York Public Service Commission in Orange & Rockland Utilities when it stated that its jurisdiction to interpret the scope of its original contract approvals "has been upheld by the courts."
In Indeck-Yerkes, the New York Supreme Court, Appellate Division, in approving the public service commission's declaratory statement interpreting the scope of its original approval of a cogeneration contract, carefully framed the issue which had been addressed by the commission:
The issue in this proceeding is not one of pure interpretation of the language of the agreement between petitioner and NiMo by application of common-law *45 principles of contract. Rather, it is whether there was a rational basis to the PSC's determination of the scope of its prior approval of the parties' agreement, particularly the price structure contained therein, as not covering other than insignificant deviations from the contract's stated initial output of approximately 49 MW.
564 N.Y.S.2d at 843.[10] The distinction stated by the Indeck-Yerkes court in framing the issue before it (involving an interpretation of the scope of the commission's order approving the subject agreement, rather than a "pure interpretation" of the agreement itself) is the same basis upon which FPC relies to differentiate its 1998 petition from its 1994 petition.
Thus, it is clear that FPC could have pursued this theory of jurisdiction throughout the proceedings involving its 1994 petition. Given its failure to do so, including its failure to appeal from dismissal of the 1994 petition, under the unique circumstances presented here, decisional finality applies.[11] The PSC's decision is affirmed.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE and QUINCE, JJ., concur.
NOTES
[1] "Qualifying Facilities" are those small power generators and cogenerators who meet the qualifying criteria set forth in Rule 25-17.080 ("Definitions and Qualifying Criteria"), Florida Administrative Code, enabling them to contract with power companies for the purchase and sale of electrical power which they generate.
[2] Subsections (a) and (b) of Rule 25-17.0832(4) provide:

(4) Avoided energy payments.
(a) For the purpose of this rule, avoided energy costs associated with firm energy sold to a utility by a qualifying facility pursuant to a utility's standard offer contract shall commence with the in-service date of the avoided unit specified in the contract. Prior to the in-service date of the avoided unit, the qualifying facility may sell as-available energy to the utility pursuant to Rule 25-17.0825(2)(a).
(b) To the extent that the avoided unit would have been operated, had that unit been installed, avoided energy costs associated with firm energy shall be the energy cost of this unit. To the extent that the avoided unit would not have been operated, firm energy purchased from qualifying facilities shall be treated as as-available energy for the purposes of determining the megawatt block size in Rule 25-17.0825(2)(a).
[3] The Commission, in later summarizing its decision, stated: "The Commission found that FPC was asking the Commission to adjudicate a contract dispute. The Commission held that it had no jurisdiction to adjudicate contract disputes involving negotiated cogeneration contracts." In re Petition of Florida Power Corp., 98 F.P.S.C. at 12:66.
[4] Commissioner Clark dissented, observing that "[t]he Order originally approving the contract had no specific amplification as to how the payments due under section 9.1.2 would be calculated, and when asked for clarification with respect to the calculation in the Petition for Declaratory Statement, it was acknowledged that the dispute involved a contract interpretation, not a clarification of the basis on which the contract was approved for cost recovery." In re Petition for Expedited Approval of Settlement Agreement, 97 F.P.S.C. 11:202, 11:216 (1997) (Docket No. 961477-EQ; Order No. PSC-97-1437-FOF-EQ, Nov. 14, 1997) (emphasis supplied).
[5] The cogenerator, Lake Cogen, timely protested this order, and subsequently moved to dismiss the proceeding on grounds of mootness. On March 30, 1998, the Commission, pursuant to a unanimous vote, issued an order holding that the Lake Cogen Order was a nullity (because the settlement agreement which the order had disapproved had, by its own terms, expired for lack of such approval), and dismissing FPC's petition in the Lake Cogen-FPC Settlement Docket. See In re Petition for Expedited Approval of Settlement Agreement, 98 F.P.S.C. 3:392 (1998) (Docket No. 961477-EQ, Order No. PSC-98-0450, FOF-EQ, Mar. 30, 1998).
[6] See Orange & Rockland Utilities, No. 96-0728, 1996 WL 707459 (stating, specifically, that, "[a]s was recently reaffirmed, it is within our authority to interpret our power purchase contract approvals, and that jurisdiction has been upheld by the courts") (citing Matter of Indeck-Yerkes Energy Servs. v. Public Serv. Comm'n. of State of N.Y., 164 A.D.2d 618, 564 N.Y.S.2d 841 (1991)).
[7] The narrow issue addressed here is the preclusive effect of the PSC's prior determination in this case as applied to FPC's 1998 petitions for declaratory relief. We do not address the substantive issue of whether, absent the unique circumstances presented here, the Commission would have jurisdiction to entertain such a petition.
[8] This Court's intervening Panda decision involved a "standard offer" contract. The issue of whether the Panda reasoning could (or could not) be applied broadly to suggest that the exercise of jurisdiction would also be appropriate where Commission rules have been incorporated into a negotiated contract is not properly before us, and therefore we do not address it here.
[9] Focusing on the same technical distinction which is urged by FPC here, the New York Public Service Commission in Orange & Rockland Utilities suggested that, while a commission may not (as the Florida PSC determined) resolve a contractual dispute between parties to a negotiated contract, it may properly entertain a petition for declaratory statement seeking clarification of how the commission first interpreted that contract at the time it was approved. See Orange & Rockland Utilities, No. 96-E-0728, 1996 WL 707459 (providing that it "is within [the commission's] authority to interpret our power purchase contract approvals, and that jurisdiction has been upheld by the courts[; therefore,] the approval of the original contract for the Crossroads site may be explained and interpreted, and O & R's petition may be construed as requesting that relief").
[10] Although the Indeck-Yerkes opinion does not reflect whether the subject contract was "standard" or negotiated, from the discussion of the contract terms, it appears to have been negotiated. Id. at 842.
[11] Based upon this conclusion, we need not reach the alternative issue raised on this appeal (that it was proper for the Commission to deny FPC's petition for declaratory statement where, as here, the matter in controversy was pending in state court).